# RICHARD E. BURDICK v. CHICAGO & NORTHWESTERN RAILWAY COMPANY.[1]

October 3, 1913.

Nos. 18,143—(253).

**Failure to remove snow — question for jury — assumption of risk.**

A brakeman in attempting to board a moving car in switching yards of defendant, was injured by his feet catching in a hard and crusted snow drift in close proximity to the track. This drift had existed for some length of time, and was formed partly by the drifting of snow and partly by snow thrown from the tracks in clearing a way for trains to pass. It is *held:*

(1) Whether it was negligence for defendant to fail to remove this snow drift was on the evidence a question for the jury.

(2) The evidence does not conclusively show that plaintiff assumed the risk.

Action in the district court for Ramsey county in behalf of the minor plaintiff to recover $50,000 for personal injuries received while in the employ of defendant. The facts are stated in the opinion. The case was tried before Brill, J., who denied defendant's motion for a directed verdict in its favor and a jury which returned a verdict for $18,500 in favor of plaintiff. From an order denying defendant's

[1] Reported in 143 N. W. 115.

Note.—On the question of the assumption of risks under railway safety appliance acts, see notes in 20 L.R.A.(N.S.) 482 and 41 L.R.A.(N.S.) 57. And as to the assumption by train employee of risks due to defects in tracks or roadbed, see note in 28 L.R.A.(N.S.) 1255. And for the assumption of risk of dangers created by master's negligence which might have been discovered by exercise of ordinary care on the part of the servant, see note in 28 L.R.A.(N.S.) 1250.

motion for judgment in its favor notwithstanding the verdict, it appealed, and it was stipulated that the appeal from the order should be considered as an appeal from the judgment thereafter entered. Affirmed.

*Brown, Abbott & Somsen,* for appellant.

*Samuel A. Anderson* and *A. F. Storey,* for respondent.

BUNN, J.

This is a personal injury action in which plaintiff recovered a verdict. Defendant moved for judgment non obstante, the motion was denied, and from the judgment thereafter entered on the verdict defendant appealed to this court.

The questions for our decision relate solely to the sufficiency of the evidence to warrant the submission of the case to the jury. There was no motion for a new trial. The facts upon which we must determine these questions are in substance as follows:

Plaintiff was the rear brakeman on a freight train of defendant that entered Auburn, Iowa, about 9:30 on the morning of January 24, 1912. Defendant's main line runs east and west through the village, which has some 400 inhabitants. The train came from the east, consisted of an engine and 15 cars, and admittedly was engaged in interstate commerce. The station at Auburn is on the north side of the main track. South of this track is a passing track which connects with the main line by a switch some 800 feet west of the station. North of the main track is a house or industry track which joins the main track west of the station about 200 feet west of the passing track switch. The house track is about 50 feet north of the main track, and the passing track some 30 feet south. A street or road crosses these tracks just west of the station. The train pulled past the west switch of the passing track, plaintiff and the other brakeman attended to the derail and switch, and the train backed onto the passing track, plaintiff riding on the caboose. When the train stopped, the caboose was near the road, and plaintiff went to the station to find out from the conductor what work there was to do. The instructions were to cut off two cars with the engine, pick up a car on the house track,

and kick it back to the string left on the passing track, and then with the engine and the two cars to back on the house track to a spur track and brick yard east of the station, where some switching was to be done. The engine and two cars were cut off, the car on the house track picked up and kicked back on the passing track. Plaintiff assisted in these movements, attending to the coupling operations. A passenger train from the east was then at the station, and plaintiff threw the passing track switch for the main line to let this train go through. At this time the engine with the two cars had passed from the main line and was backing east on the house track. Plaintiff walked across the space between the main track and the house track to catch the rear end of the two cars and ride on it to protect the crossing. He walked in a northerly direction through a foot of loose snow that was on the ground, reached the rear end of the car next to the engine, took hold of the "handhold" on the car with both hands, and was preparing to take the necessary steps to get his feet in the stirrup, when they were caught in a crusted and hard snow drift. The train was moving at the rate of five miles an hour. Plaintiff was unable to extricate his feet, and was compelled to let go with his hands. He fell between the train and the snow bank, and was run over by the wheels of the car.

The drift or bank of snow extended along the track for a distance of about 30 feet. On the north side of the track and some 30 feet distant was a corn crib, which was apparently the cause of the snow forming the drift on and across the track. The evidence tended to show that this drift had been formed some two weeks prior to the accident, and that it had been shoveled out to a width sufficient to enable trains to move on the track, but to no greater width. Indeed the snow from the tracks was piled on the sides, making a sloping bank varying in height from 18 inches to three feet or more on the south side of the rails. This bank had become packed and crusted, and clearly enough was a dangerous place for trainmen to attempt to board a moving car or engine.

The action was brought under the Federal Employers Liability Act, and it is conceded that the question of contributory negligence is not in the case on this appeal from the judgment. The contentions

relied upon for a reversal are: (1) That there was no evidence of defendant's negligence sufficient to sustain a verdict for plaintiff, (2) that it conclusively appears that plaintiff assumed the risk.

1. That the hard, crusted snow bank in such proximity to the house track constituted a dangerous place for switchmen to work we have already said, and we so hold. The only doubt on this branch of the case is whether a jury would be justified in finding that defendant ought to have anticipated that switchmen or brakemen in the performance of their duties in the yards might meet with an accident from the presence of this snow bank so close to the track. If so, it was clearly enough the duty of defendant to clear away the snow drift for a distance on either side of the rails, sufficient to make the place reasonably safe for the men engaged in moving and switching the trains, as well as to make a passage for the trains themselves.

Had the yards been more extensive and the train movements more frequent, it can hardly be doubted that due care for the safety of the employees of defendant would require the removal of this dangerous obstruction. It is true that Auburn was but a small town, that the trains each day were few, and switching operations in the yards not very frequent or extensive. It also appears that the industries lay to the east of the station, and that the corn crib which seems to have caused the snow to drift was not defendant's building. On the other hand there was switching in the yards each day; the westerly switches leading from the main line to the passing and house tracks were not far from the drift. It does not seem unreasonable that a brakeman, after setting one of these switches, should try to board his train in the vicinity of this drift, or that in the performance of other duties he might be called upon to work at this point, as for instance in making a coupling. It is not important that this was the only point where it was not safe. Defendant had no right to assume that all trainmen would be aware of the obstruction, or that they would be able always to avoid it. While the drift was visible in the daytime, it would not be readily discernible at night, and at no time would a stranger to the yards be aware of its dangerous character, even if he saw it. It is not imposing a great burden on defendant to require it to remove such an obstruction. Its plea

of the amount of snow that winter does not impress us. Not only did the defendant remove the drift from the tracks, but it piled up the snow on the sides, making the place more dangerous by causing a sloping, crusted bank of snow just outside the rails. It would have been an easy matter to have made a wider path.

In our opinion it was for the jury to say whether under all the circumstances defendant should have anticipated that an accident might happen from the presence of this obstruction close to the track. The case does not greatly differ in its facts from Gibson v. Iowa Central Ry. Co. 115 Minn. 147, 131 N. W. 1057, and in the principle involved there is no difference. We hold that the evidence made a case for the jury on the question of the negligence of defendant.

2. Passing the question, whether the defense of assumption of risk is open under the Federal act in a case like this, with the remark that if it is, it comes near nullifying the provision of the act removing contributory negligence as a defense, we have no difficulty in holding that in the case at bar the question of assumption of risk was for the jury. Plaintiff, while he could have seen the drift had he looked that way, did not in fact see it. And he did not know that the snow at that point was packed and crusted. He had not before switched in this yard in the daytime. We are unable to hold as a matter of law that he ought to have known and appreciated the danger.

Judgment affirmed.