## LILLIAN FITZGERALD v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 21, 1923.

No. 23,715.

**Charge as to employment in interstate commerce correct.**
1. The court correctly charged that the plaintiff's intestate, a night watchman about the defendant's yards, was employed in interstate commerce at the time of his death. The charge is supported upon the ground that the train which he was endeavoring to board was an interstate train, as well as upon the ground that his duties in protecting freight, nearly all of which was interstate, though not confined to interstate traffic, were inseparably connected with it.

[1]Reported in 196 N. W. 657.

**Question of negligence in banking snow for the jury.**

2. Whether the defendant was negligent in banking snow along one of its tracks and allowing it to remain there, without a sufficient clearance for an employe on the side of the train, or attempting to board it, was for the jury.

**Assumption of risk—contributory negligence.**

3. The plaintiff's intestate did not as a matter of law assume the risk resulting from the presence of the snow bank, nor was he as a matter of law contributorily negligent.

**Decedent in line of his employment.**

4. The evidence sustains the finding that the plaintiff's intestate was in the line of his employment when killed.

Action in the district court for St. Louis County by the administratrix of the estate of George V. Fitzgerald, deceased, to recover $25,000 for the death of her intestate. The case was tried before Cant, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $14,064. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*M. L. Countryman* and *Baldwin, Baldwin, Holmes & Mayall*, for appellant.

*Samuel A. Anderson* and *Warner E. Whippple*, for respondent.

DIBELL, J.

Action under the Federal Employers Liability Act to recover damages for the death of the plaintiff's intestate. There was a verdict for the plaintiff and the defendant appeals from the order denying its alternative motion for judgment or a new trial.

There are four questions:

(1) Whether the plaintiff's intestate was employed by the defendant in interstate commerce as charged by the court.

(2) Whether the evidence sustains the jury's finding that the defendant was negligent.

(3) Whether as a matter of law the intestate assumed the risk which resulted in his death, or was guilty of negligence which contributed to it.

(4) Whether at the time of his death the decedent was in the line of his employment.

1. The defendant has extensive transfer yards at Superior, Wisconsin. The deceased was engaged as a night watchman in the transfer yards just south of Winter street, which runs east and west. His duty required him to protect the freight in the custody of the railway against theft and trespass, and in general to keep a lookout, going from place to place as conditions suggested, riding the trains when that seemed to him the proper and expedient thing to do, or when something in connection therewith seemed to require attention.

In attempting to get upon a freight train passing northerly across Winter street at about 6:30 on the morning of March 12, 1922, he was killed. Trains of the defendant come into the yards from Minnesota over two different lines, one from the Twin Cities and points farther north and farther west, and one reaching the west and the coast through Crookston and other points in Minnesota. Freight coming into Wisconsin on these lines is interstate. The amount of the defendant's intrastate traffic in Wisconsin is quite negligible. Its mileage in Wisconsin, outside its yards, is inconsiderable. The train which the decedent attempted to board had some 15 or 20 cars and a caboose, and was going north. It was on the easterly track crossing Winter street. This was known as the main line Duluth track. A train was regularly made up in the yards early in the morning and started for Duluth about seven. The defendant offered no evidence as to the character of the train or its destination. Such evidence was immediately available. The court was justified in charging the jury that the train on which the plaintiff was killed was engaged in interstate traffic.

Again, plaintiff's duties in and about the transfer yard required him to protect interstate and intrastate freight. He did not look after one to the exclusion of the other. The great mass of the freight was interstate. It was his duty to get upon trains such as

this one whenever his duties required his presence there, or in going from point to point. Boarding trains was frequent. He went about his duties without specific direction from a superior. His judgment was his guide. His duty was to watch and do what the occasion suggested. He would go upon a train engaged in interstate traffic or intrastate traffic indifferently, or upon a train or car carrying both. He protected both classes of freight without thought of the one with which he was engaged at the time. His duties were not practicably separable. He could not himself know, nor ordinarily could any one else, whether at a particular time he was concerned with interstate or intrastate freight. His duties were so related that in the practical administration of the liability act it is not possible to say that at one moment he was employed in interstate commerce and the next in intrastate traffic disconnected from interstate. The character of his work in each was the same. The two were so interrelated that he was not engaged at any one time in one to the conscious exclusion of the other. He might be on an interstate car when his objective was something being done or needing attention in intrastate traffic, and vice versa. The pilferer or trespasser for whom he was on the watch did not distinguish between state and interstate freight and would take or disturb one kind or both; and he made no distinction in watching those attacking the two different classes. On the showing made we think the case is within the principle of those where a pump-man is serving both kinds of commerce, or one is drying sand for two classes of locomotives, or a watchman is serving both classes of trains, and other cases holding the employe engaged in interstate traffic, though at the particular time he may be serving state traffic as well, or it be impossible to show which kind. Erie R. Co. v. Collins, 253 U. S. 77, 40 Sup. Ct. 450, 64 L. ed. 790; Erie R. Co. v. Szary, 253 U. S. 86, 40 Sup. Ct. 454, 64 L. ed. 794; Philadelphia & R. R. Co. v. Di Donato, 256 U. S. 327, 41 Sup. Ct. 516, 65 L. ed. 955; North Carolina R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. ed. 591, Ann. Cas. 1914C 159; Erie R. Co. v. Winfield, 244 U. S. 170, 37 Sup. Ct. 556, 61 L. ed. 1057, Ann. Cas. 1918B, 662; Westcott v. Chicago R. Co. supra, page 332, and cases cited.

2. On February 21 or 22, 1922, there was an unusually heavy snowfall at the head of the lakes. The defendant with great effort cleared its tracks. On the easterly side of the easterly track, on which the train in question moved toward Duluth, just northerly of Winter street, it piled the snow so that there was a bank some 5 feet high and 125 or 150 feet long without a safe clearance for a man on the side of a train or trying to board it. There is no substantial question of the causal connection between the presence of the snowbank and the death of the decedent. Whether this bank should have been removed, or not have been made at all, was a question of fact for the jury. Switchmen made use of the Winter street crossing. They might get on the cars there. They might get on at the point where the decedent sought to board the train and just as he attempted to get on. The question does not differ materially from that in Burdick v. Chicago & Northwestern Ry. Co. 123 Minn. 105, 143 N. W. 115, where negligence in permitting the accumulation of snow, less pronounced than here, was held for the jury.

3. The decedent did not as a matter of law assume the risk resulting from the presence of the snowbank so close to a passing train. He attempted to get on the train at the south side of Winter street and on the east side of the track. It is not shown that he knew of the presence of the snow bank or appreciated the risk which it caused. He had been working at another yard before, and at the transfer yard for some two nights only.

Neither can it be held that he was guilty as a matter of law of contributory negligence, if there was such a question in the case. Whatever there was of assumption of risks or of contributory negligence was for the jury under the holding in the Burdick case.

4. It is urged by the defendant that in any event the decedent was not in the line of his employment at the time he was killed. The specific claim is that he was getting on the train to go to Duluth, where he lived, something like a half hour before his day's service ended.

There is evidence supporting this view. There is evidence that he came from the east, in something of a hurry, put his dinner pail

on his left arm, and endeavored to board the train. There is evidence that he asked a bystander whether the train was going to Duluth. There is no presumption that he was boarding the train in working hours for a purpose not connected with the discharge of his duties. The evidence might support a finding that he had abandoned his day's work and was taking the train for Duluth, his home, but it did not require it. If such were the fact the verdict should have gone for the defendant under the trial court's charge. But the jury did not so find. The question was carefully submitted under an instruction that if the decedent was taking the train to Duluth for his own purposes there could be no recovery. The jury necessarily found that he was not. If he saw anything on this train calling for his attention as watchman, anything suspicious or wrong, it was in the line of his duty to get upon it and investigate. The evidence fairly suggests that an occasion might arise when he should do just what he did. The evidence of the bystander was proper for consideration, and bore against the plaintiff. If the decedent could testify he might deny partly or wholly the statement attributed to him, or he might admit it, and give an adequate explanation; and either admitting or denying he might give an explanation showing that his attempted boarding of the car was in pursuit of his duties as a watchman of the company's property. Something may have occurred back in the yards, from which he hurriedly came, which would justify the query, if made, and whether made or not, might show that his attempt to get upon the train was in the strict pursuit of duty. No presumption against him is indulged and the evidence against him is not conclusive.

Order affirmed.