# DONALD F. HOLWEGER v. GREAT NORTHERN RAILWAY COMPANY.

130 N. W. (2d) 354.

August 7, 1964—No. 39,144.

84

*John B. Halloran* and *James L. Alfveby*, for appellant.
*Anthony Kane, D. E. Engle,* and *Richard V. Wicka,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Appeal by plaintiff, Donald F. Holweger, of Grand Forks, North Dakota, from an order of the District Court of Clay County, denying his motion to vacate and set aside a verdict in his favor in the sum of $10,000 against his employer, Great Northern Railway Company, and to grant him a new trial. The proceedings involve four separate causes of action—three under the Federal Employers Liability Act[1] and one under the Federal Safety Appliance Acts[2]—which were tried together. The verdict constituted the jury's total award in all such causes of action and is regarded as inadequate by plaintiff.

Plaintiff's claims in the four causes of action are as follows:

(1)  On October 13, 1960, while he was working for defendant as a switchman, his left foot became caught in a hole or depression under

---

[1] 45 USCA, §§ 51 to 60.
[2] 45 USCA, §§ 1 to 16.

a switch tie maintained by defendant so that his left knee was wrenched. (This action was brought under the Federal Employers Liability Act, 45 USCA, § 51.)

(2) On October 28, 1960, while working for defendant as a switchman and just after leaving defendant's yard office, he stumbled over a plank on premises maintained by defendant and again wrenched his left knee. (This action was brought under the Federal Employers Liability Act, 45 USCA, § 51.)

(3) On December 11, 1960, at about 10:30 p. m. while working for defendant as a switchman, he was required to get off a moving train and walk some 15 or 20 feet in the opposite direction to signal the engineer that a stop was required and while so walking he stepped into a rut left by a caterpillar tractor in an unlighted area and again wrenched his knee. (This action was brought under the Federal Employers Liability Act, 45 USCA, § 51.)

(4) On November 12, 1960, while working for defendant as a switchman, in attempting to pull out the pin of an automatic coupler on a freight car, he was required to exert unusual pressure because of defects in the coupler so that he lost his balance and again fell and wrenched his left knee. (This action was brought under the Federal Safety Appliance Acts, 45 USCA, § 2.)

It is agreed by the parties that in the actions brought under the Federal Employers Liability Act the doctrine of comparative negligence was applicable,[3] and that the defense of assumption of risk was not available;[4] and that in the action based on violation of the Federal Safety Appliance Acts the defenses of assumption of risk[5] and contributory negligence[6] were not available if it were established that the automatic coupler involved was defective and hence being used in violation of 45 USCA, § 2, at the time defendant was operating it.

Plaintiff's motion for a new trial was based upon the grounds (1) that the court erred in failing to give his requested instructions relative

[3]45 USCA, § 53.
[4]45 USCA, § 54.
[5]45 USCA, § 7.
[6]45 USCA, § 53.

to defendant's duty to exercise reasonable care to provide him with a reasonably safe place to work; (2) that the court erred in excluding evidence relative to the time during which defendant knew or should have known of the unsafe conditions which he claimed existed where he was required to work; (3) that the court erred in excluding opinion of his fellow employee that the automatic coupler with which he was required to work was defective; (4) that in the course of the trial certain procedures as hereinafter set forth constituted misconduct or had the effect of depriving him of a fair trial; and (5) that all such errors resulted in an inadequate verdict.

After the parties had rested, plaintiff's counsel requested instructions as follows:

### "INSTRUCTION No. 3

"* * * that at the time and place of the happening of the accidents, in question, the defendant, acting through its agents, servants and employees, was required to exercise ordinary and reasonable care to provide a reasonably safe place for the plaintiff to work."

### "INSTRUCTION No. 8

"A duty to furnish a safe place to work includes the duty of making reasonable inspections to discover defects or insufficiencies in * * * appliances, machinery, track, roadbed, works, or other equipment as may constitute a danger to defendant's employees * * *."

### "INSTRUCTION No. 9

"* * * defendant * * * was under the duty to maintain and control the area and railroad yards involved in this accident, including its appliances, track, railroad ties, roadbed, work and other equipment for switching operations * * *."

In the instructions given, the court correctly charged the jury as follows:

"It is the * * * federal law, that it shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line a car used in moving interstate traffic not equipped with couplers coupling automatically by impact,

and which can be uncoupled without the necessity of [a] man going between the ends of the cars.

\* \* \* \* \*

"Every common carrier by railroad while engaging in interstate commerce shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, for such injuries resulting in whole or in part from the negligence of any of the officers, agents or employes of such carrier, or by reason of any defect or insufficiency, due to the negligence, in its cars, engines, appliances, machinery, track, roadbed, or other equipment.

"\* \* \* the fact that the employe may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employe. Provided, that no such employe who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employes contributed to the injury or death of such employe.

"\* \* \* such employe shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier; and no employe shall be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employes contributed to the injury or death of such employe.

\* \* \* \* \*

"In one of these claims, the one referring to November 12th, the so-called pin lifting claim, the plaintiff contends that the car was being used in violation of law, and in connection with that claim there is no issue of contributory negligence. The other three claims are based upon the alleged negligence of the defendant.

"The defendant railroad company is not an insurer or guarantor of plaintiff's safety, and the mere fact of injury is not alone evidence of negligence on the part of the defendant."

After these instructions, the court asked counsel if there were any omissions or misstatements, to which plaintiff's attorney replied:

"If the Court please, at this time the plaintiff wishes to make the written instructions submitted to the court a part of the file in this case, and at the same time respectfully excepts to the Court's failure to give to the jury instructions numbered * * * 3, * * * 8, [and] 9 [above set forth] * * *."

Plaintiff contends further that during the trial certain procedures occurred, to which exceptions were taken, which constituted grounds for reversal. These may be summarized as follows:

(a) Plaintiff testified that he had observed defendant's claim agent taking photographs of the area involved in the litigation. His counsel, in the presence of the jury, asked defendant's counsel if such photographs were available. The matter was then discussed in chambers and defendant's counsel stated that he would ascertain if any photographs had been taken. He later advised the court and plaintiff's counsel that none had been taken, and at the close of the trial the court so informed the jury, stating that the inquiry by plaintiff's counsel had been "unfortunate." This characterization, plaintiff contends, placed him in a bad light before the jury.

(b) Plaintiff's counsel offered in evidence the opinion of a fellow employee to the effect that the automatic coupler involved in the action under the Federal Safety Appliance Acts was defective. Objection thereto was sustained on the ground that the foundation for such opinion evidence was inadequate in that it did not establish that the witness had examined the automatic coupler involved and was aware of the type of equipment to which it had been attached and did not establish other conditions and factors present at the time. Plaintiff contends that the rejection of this evidence constituted error.

(c) Prior to the trial, at the request of defendant, plaintiff submitted to a physical examination by Dr. E. P. Wenz at Fargo, North Dakota. When it appeared that Dr. Wenz would be unable to attend court, at defendant's request plaintiff submitted to an examination by another doctor designated by defendant. At the trial it was agreed by

counsel for the parties that no reference would be made to Dr. Wenz' examination. Later during the trial defendant's counsel stated in the jury's presence that defendant had not required plaintiff to be examined by more than one doctor. Contending that this statement was prejudicial, plaintiff's counsel thereupon asked leave to present evidence to show that plaintiff had been also examined by Dr. Wenz. This request was denied, and plaintiff contends that under Rule 59.01, Rules of Civil Procedure,[7] this constituted misconduct.

(d) During the trial plaintiff offered evidence, rejected by the court, to prove that for at least 30 days defendant had had ample opportunity to observe that there was no adequate ballast under and around a switch tie upon which he had fallen; that for at least 6 months defendant had had ample opportunity to observe that there were unfilled drainage holes in the area where he had fallen; and that for several weeks defendant had had ample opportunity to observe that loose boards and debris, over which he had fallen, had been scattered about in an area adjacent to the door of defendant's yard office. Plaintiff contends that exclusion of this evidence affected the degree of negligence of which the jury could find defendant guilty.

(e) Plaintiff's counsel frequently sought to submit the foregoing evidence after objections thereto had been sustained by the court. Because of such efforts the court in chambers threatened that he would be held in contempt if he further persisted therein.

As indicated above, it is plaintiff's contention that the foregoing proceedings, including the rejection of the evidence described and the threat to hold his counsel in contempt if he persisted in submitting it, constituted error requiring a new trial.

■ The pleadings, the conduct of the trial, and the requests for instructions herein all establish that in the three causes of action brought under the Federal Employers Liability Act plaintiff sought recovery on

---

[7]Rule 59.01, Rules of Civil Procedure, provides in part:

"A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:

\*    \*    \*    \*    \*

"(2) Misconduct of the jury or prevailing party."

the theory that defendant had· been negligent in failing to· exercise reasonable care to provide him with a reasonably safe place in which to work. In support of his claims in this respect he submitted evidence that defendant had provided inadequate ballast for switch ties; that it had permitted holes and depressions to remain near or under such ties; and· that it had allowed boards and· debris to be scattered about in the area where he was required to work. It is well established that evidence of conditions of this nature is sufficient to support a finding of negligence on the part of a carrier if it is established that the latter knew or should have known of the unsafe conditions for a sufficient period of time to remedy them and had failed to do so. See, Reams v. Chicago, ·M. St. P. & P. R. Co. 180 Minn. 534, 231 N. W. 236 (icy condition on depot platform); Thompson v. Byram, 179 Minn. 67, 228 N. W. 546 (a jack block placed where switchmen were required to work); Fitzgerald v. G. N. Ry. Co. 157 Minn. 412, 196 N. W. 657 (snow banked too close to tracks); Kelley v. Chicago, B. & Q. R.·Co. 142 Minn. 44, 170 N. W. 886 (a pile of cinders near a platform); Nelson v. Chicago, M. & St. P. Ry. Co. 139 Minn. 52, 165 N. W. 866 (truck with baggage left in proximity to track); Riley v.·Minneapolis & St. L. R. Co. 132 Minn. 195, 156 N. W. 272 (telephone wire strung across tracks); Burdick v. Chicago & N. W. Ry. Co. 123 Minn. 105, 143 N. W. 115 (hard and crusted snow in close proximity to track).

■ Accordingly, when plaintiff requested instructions with reference to defendant's obligation of exercising reasonable care to furnish him with a reasonably safe place to work (requests Nos. 3, 8, and 9 above set forth), he was clearly entitled thereto under his theory of the case. See, Phillips v. G. N. Ry. Co. 257 Minn. 195, 100 N. W. (2d) 765; Hagen v. Snow, 244 Minn. 101, 69 N. W. (2d) 100; Jacobson v. Chicago & N. W. Ry. Co. 221 Minn. 454, 22 N. W. (2d) 455; Baez v. Southern Pac. Co. 210 Cal. App. (2d) 714, 26 Cal. Rptr. 899; Seaboard Air Line R. Co. v.' Haynes (Fla.) 47 So. (2d) 324; Speiring v. Chicago & E. I. R. Co. 325 Ill. App. 576, 60 N. E. (2d) 267; Winslow v. Missouri, K. & T. Ry. Co. (Mo. App.) 192 S. W. 121; Hill v. Atlantic Coast Line R. Co. 231 N. C. 499, 57 S. E. (2d)

781; Haselden v. Atlantic Coast Line R. Co. 214 S. C. 410, 53 S. E. (2d) 60; Burch v. Reading Co. (3 Cir.) 240 F. (2d) 574; Chicago, R. I. & P. R. Co. v. Lint (8 Cir.) 217 F. (2d) 279; Fleming v. Husted (8 Cir.) 164 F. (2d) 65; Thomson v. Boles (8 Cir.) 123 F. (2d) 487. As stated in Hagen v. Snow, 244 Minn. 101, 106, 69 N. W. (2d) 100, 103:

"* * * It is well established that, 'as against a mere general or abstract charge, a party is entitled to a specific instruction on his theory of the case, if there is evidence to support it and if a proper request for such an instruction is made.' Chicago & N. W. Ry. Co. v. Green (8 Cir.) 164 F. (2d) 55, 61; Chicago, R. I. & P. R. Co. v. Lint (8 Cir.) 217 F. (2d) 279, 285; 53 Am. Jur., Trial, § 626. Furthermore, 'even a request for an instruction which is not entirely perfect may in some situations impose upon the court the duty to give a more specific instruction on a particular issue, where it soundly appears that such an instruction is needful to enable the jury to intelligently determine the question.' Chicago & N. W. Ry. Co. v. Green (8 Cir.) 164 F. (2d) 55, 61."

■ We do not agree with defendant's contention that the court's general instruction with respect to the liability of common carriers for injuries resulting in whole or in part from the negligence of its officers, agents, or its employees, or by reason of any defects in its appliances, track, roadbed, or other equipment as above set forth was adequate to cover plaintiff's theory of the case on the issue referred to. There is nothing in the language of this instruction which would charge the jury with respect to the positive duty which rested upon defendant to exercise reasonable care to furnish plaintiff with a reasonably safe place to work, particularly when the general instruction referred to is considered with the court's instruction that defendant "is not an insurer or guarantor of plaintiff's safety, and the mere fact of injury is not alone evidence of negligence on the part of the defendant." While the latter instruction correctly stated applicable legal principles, the absence of any specific instructions with respect to defendant's obligation to furnish its employees with a safe place to work may have led the jury to conclude that there was no basis for plaintiff's claims under the

Federal Employers Liability Act. It cannot be determined from the general verdict whether the jury discounted plaintiff's theory of negligence under this enactment and confined its award solely to defendant's negligence under the Federal Safety Appliance Acts or whether its award related to all of the actions involved. It would follow that the refusal of the court to give the instructions requested constituted material error requiring a new trial.

■ In seeking to establish defendant's negligence, plaintiff proffered evidence in the form of testimony by his fellow employees to show the length of time the described unsafe conditions had been permitted to exist and to thereby establish that defendant knew or should have known of their presence for a sufficient time to have remedied them. This factor, of course, would be material to any finding of negligence against defendant. Van Horn v. Southern Pac. Co. 141 Cal. App. (2d) 528, 297 P. (2d) 479; Goslin v. Kurn, 351 Mo. 395, 173 S. W. (2d) 79; Miller v. Cincinnati, N. O. & T. P. Ry. Co. (6 Cir.) 317 F. (2d) 693. This evidence was rejected upon defendant's objection that it was "immaterial and irrelevant" and "proves nothing" because "[w]e are interested here only in the condition at the time of this accident."

Plaintiff asserts that the proffered evidence should have been received not only for the purpose of establishing a material element in defendant's negligence which was then in sharp dispute but also to show the extent of such negligence as a relevant factor in determining plaintiff's damages under the comparative negligence doctrine. Defendant asserts that its rejection did not harm plaintiff because the burden of establishing that defendant lacked knowledge of the unsafe conditions described rested upon it, and no evidence with respect thereto having been submitted by it, plaintiff had prevailed on this issue by default. We do not agree with defendant's position. At the time the evidence was submitted all issues with respect to defendant's negligence were being sharply contested. Accordingly it was incumbent upon plaintiff to establish not only that the unsafe conditions existed but that defendant had or should have had knowledge of them for a sufficient period of time to have remedied them. Sears v. Southern Pac.

Co. (9 Cir.) 313 F. (2d) 498; Kaminski v. Chicago River & Ind. R. Co. (7 Cir.) 200 F. (2d) 1; 38 Am. Jur., Negligence, § 23; 65 C. J. S., Negligence, § 5a and d. As previously indicated, the jury's verdict does not reveal whether the damages awarded thereunder covered all causes of action or whether they were limited to the one alleging violation of the Federal Safety Appliance Acts. Defendant's contention that no harm resulted to plaintiff by the rejection of this evidence does not appear to give cognizance to this possibility.

Further, under the comparative negligence doctrine damages must be apportioned upon the basis of the percentage of negligence attributable to the contesting parties, and accordingly any evidence having a bearing upon the extent of the negligence of either party would be relevant. Here, since the rejected evidence bore directly upon the extent of defendant's knowledge of the unsafe conditions, it was relevant with respect to both the quantity and the quality of its negligence in permitting the conditions to exist. It would follow that the court erred in sustaining defendant's objection to its admission. Sears v. Southern Pac. Co. *supra*;[8] Katila v. Baltimore & O. R. Co. (6 Cir.) 104 F.

---

[8] In Sears v. Southern Pac. Co. (9 Cir.) 313 F. (2d) 498, 501, in holding that evidence was admissible to establish that defendant carrier there had knowledge of alleged hazardous conditions, the court stated: "Defendant * * * contends that any adverse effect the ruling [rejecting such evidence] may have had on plaintiff's case was cured by the court's instructions. Defendant points out that although its knowledge, actual or constructive, of the peril was a material fact essential to the existence of negligence * * *, the court completely ignored this issue and flatly told the jury that defendant had the duty to provide plaintiff with a reasonably safe place to work. Defendant's contention would have merit if this case were governed by common law rules, for under them relative negligence by either party is immaterial, and any causal negligence of the plaintiff operates to bar his recovery. But this case is prosecuted under the FELA and section 3 of that Act expressly provides that a plaintiff's contributory negligence is no bar 'but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to [him].'

" '[This] statutory direction * * * means, and can only mean, that, where the causal negligence is partly attributable to him and partly to the carrier, he shall not recover full damages, but only a proportional amount

(2d) 842; Norfolk & W. Ry. Co. v. Earnest, 229 U. S. 114, 33 S. Ct. 654, 57 L. ed. 1096; New York, C. & St. L. R. Co. v. Niebel (6 Cir.) 214 F. 952.

bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both; * * *.' Norfolk & Western Ry. v. Earnest, 229 U. S. 114, 122, 33 S. Ct. 654, 657, 57 L. Ed. 1096 (1913).

\* \* \* \* \*

"Does Section 3 of the FELA, in referring to 'amount of negligence,' relate only to the quantity of a party's negligence, or does it relate also to its quality?

"Norfolk & Western Railway v. Earnest, supra, seems to contemplate the latter. The Court did not state that a plaintiff is entitled to receive a share of the damages based on the amount of the injury caused by the negligence of the defendant, but stated in effect that the plaintiff is entitled to a share of the damages based upon the amount of the defendant's negligence as it compares to the negligence of both parties. * * * In thus placing emphasis on comparative fault, rather than comparative contribution, the Supreme Court apparently regarded as important all circumstances tending to characterize the fault of the parties. The Sixth Circuit, in commenting on the Earnest case, has so held [New York, C. & St. L. R. Co. v. Niebel (6 Cir.) 214 F. 952]. * * *

\* \* \* \* \*

"* * * We share the view of the Sixth Circuit that no fair appraisal of the fault of the party can be made unless all incidents of an act of negligence, as well as the act itself, are presented to the jury for its consideration. [Citing Mole and Wilson, *A Study of Comparative Negligence,* 17 Cornell L. Q. 333, 604 (1932); Philbrick, *Loss Apportionment in Negligence Cases,* 99 U. Pa. L. Rev. 572, 766 (1951); Prosser, *Comparative Negligence,* 51 Mich. L. Rev. 465 (1953); Turk, *Comparative Negligence on the March,* 28 Chi-Kent L. Rev. 189, 304 (1950).]

"The question remains whether the exclusion of this exhibit was prejudicial. So far as this evidence tended to show defendant's liability, its exclusion was not harmful to the plaintiff because the verdict in his favor represents an implied finding that the defendant was negligent; but in addition, the exhibit was also relevant to the issue of damages, for plaintiff's relative fault with respect to the occurrence of the accident directly affected the amount of that verdict."

Likewise, in New York, C. & St. L. R. Co. v. Niebel (6 Cir.) 214 F. 952, 956, the court stated: "* * * Under the rule of comparative negligence, the jury is entitled to consider all the circumstances which characterize the

■ Plaintiff asserts that the trial court erred in rejecting the proffered opinion of his fellow employee to the effect that the automatic coupler involved in the action under the Federal Safety Appliance Acts was defective if it had operated in the manner described by plaintiff. The admissibility of opinion evidence of this type depends largely upon the sufficiency of the foundation laid for it, and the trial court is vested with wide discretion in determining the adequacy thereof. 7 Dunnell, Dig. (3 ed.) §§ 3312, 3313. Here, where the foundation did not show that the employee called upon to testify with respect to the condition of the coupler had personal knowledge of it; had seen or operated it at any time or place; or knew anything about the equipment to which it had been attached or about other conditions present, it would seem clear that the court did not abuse its discretion in holding that the foundation for the evidence was inadequate. 7 Dunnell, Dig. (3 ed.) § 3313. See, Housing and Redevelopment Authority v. Zweigbaum, 257 Minn. 233, 100 N. W. (2d) 719.

■ With respect to the remaining assignments of error above outlined, we are of the opinion that none of them would be sufficient to justify reversal here. While they disclose a clash of personalities between the court and plaintiff's counsel, any acrimony or sharp admonitions arising therefrom for the most part were without the presence of the jury. Since it is not likely that the conditions giving rise to this situation will be present at the next trial, it is clear that nothing will be gained by a further discussion of them at this time.

The order appealed from is reversed and a new trial granted.

---

negligence of either party and which tend to fix the quantity and quality of that negligence in its relation to the sum total of the negligence of both parties. Even though the negligence of either party clearly appears, all circumstances of aggravation or of mitigation must be considered * * *."