Brett A. **MUEHLHAUSER** and Lynn Bean Singewald as co-trustees for the heirs and next-of-kin of Salina M. Muehlhauser, deceased, Respondents,

v.

Korey James **ERICKSON**, Defendant,

**Hartmann Well Drilling and Service, et al., Appellants.**

No. CX–00–656.

Court of Appeals of Minnesota.

Dec. 26, 2000.

Harry A. Sieben, Jr., Jeffrey M. Montpetit, Sieben, Grose, Von Holtum & Carey, Minneapolis, and Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, for respondents.

Eric J. Magnuson, Brian A. Wood, John M. Bjorkman, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, for defendant.

James T. Martin, Dan T. Ryerson, Gislason, Martin & Varpness, PA., Edina, for appellants.

Considered and decided by WILLIS, Presiding Judge, SHUMAKER, Judge, and MULALLY, Judge.*

## OPINION

SHUMAKER, Judge.

Appellants Brian Hartmann and Hartmann Well Drilling and Service contend that the trial court erred in denying their motion for JNOV or, in the alternative, a new trial; in excluding eyewitness lay-opinion testimony; in improperly instructing the jury on damages; in refusing to give a curative instruction after final arguments; and in improperly awarding pre-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

verdict interest on future damages. We affirm in part, reverse in part, and remand.

## FACTS

As Sara Muehlhauser prepared to make a left turn at an intersection, respondent Kory Erickson's sport utility vehicle collided with the rear of her minivan. The impact propelled the van across an oncoming traffic lane, where it was struck by a truck that appellant Brian Hartmann was driving for appellant Hartmann Well Drilling and Service (Hartmann). The truck was carrying a load of metal pipes. The collision caused some pipes to come loose, and one of them struck van passenger Salina Muehlhauser in the head and killed her.

At trial, the co-trustees for Salina Muehlhauser's next-of-kin contended that Brian Hartmann had been negligent in failing properly to load and secure the pipes and that his negligence also violated a federal motor carrier regulation. Over Hartmann's objection, the trial court admitted the federal regulation as evidence of the customary practices followed in securing loads on trucks. The court excluded Hartmann's offer of the lay opinion of a passenger in the truck as to movements and positions of the van after impact with the truck.

At the end of the trial, the court instructed the jury on the law of negligence and on the measure of damages for wrongful death. Hartmann objected to the damages instruction. The jury awarded damages in the amount of $495,000 and, over Hartmann's objection, the court awarded interest on the entire amount. The court denied Hartmann's alternative motions for JNOV or a new trial. This appeal followed.

## ISSUES

1. Where the trial court instructed that the standard of care to be applied was contained in the common-law negligence instruction, did the court err in denying appellants' motion for JNOV or, in the alternative, a new trial made on the ground that the evidence did not establish a violation of a federal motor carrier regulation that was received in the case?

2. Did the trial court err in excluding eyewitness lay-opinion testimony on the ground that appellants failed to show that the "perception" requirement of Minn.R.Evid. 701 had been met?

3. Did the trial court err in failing to include the term "pecuniary damages," as used by the wrongful-death statute, when instructing the jury on damages?

4. Did the trial court err in failing to give a specific curative instruction when appellants objected to the co-trustees' misstatement of the law in final argument?

5. Did the trial court err by including future damages in its award of pre-verdict interest?

## ANALYSIS

 Hartmann first argues that the trial court erred in denying the alternative motion for JNOV or a new trial.

Where JNOV has been denied by the trial court, on appellate review the trial court must be affirmed, if, in the record, there is any competent evidence reasonably tending to sustain the verdict. Unless the evidence is practically conclusive against the verdict, [this court] will not set the verdict aside. The evidence must be considered in the light most favorable to the prevailing party and an appellant court must not set the verdict aside if it can be sustained by any reasonable theory of the evidence.

*Pouliot v. Fitzsimmons*, 582 N.W.2d 221, 224 (Minn.1998) (citations and quotations omitted). JNOV will only be granted when it would be impossible for reasonable minds to come to a different conclusion because the evidence is so overwhelmingly

on one side. *Lamb v. Jordan*, 333 N.W.2d 852, 855 (Minn.1983). As an alternative to JNOV, a party may obtain a new trial where the verdict is not justified by the evidence. Minn.R.Civ.P. 59.01(g). The decision to grant a new trial lies within the sound discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. *Halla Nursery, Inc. v. Baumann–Furrie & Co.*, 454 N.W.2d 905, 910 (Minn.1990).

### Negligence

■ Hartmann argues that the co-trustees relied entirely on a portion of the Federal Motor Carrier Safety Regulations to establish the standard of care for their negligence claim and that the evidence failed to show that Hartmann violated any regulation. The standard of care that the trial court instructed the jury to apply was that of ordinary common-law negligence. The court did not tie that standard to the federal regulations but rather instructed the jury that it could consider evidence of industry standards in deciding the negligence issue:

> Evidence of standards or custom is not conclusive. It is just one piece of evidence. You may consider an industrial standard to decide whether reasonable care was used. You may consider what is usually done or customary in this industry to decide whether reasonable care was used. *Consider this evidence along with all the other evidence when you decide if reasonable care was used.*

(Emphasis added.) A fair reading of that instruction, together with the negligence instruction, indicates that any failure to comply with a standard of conduct for securing loads would have evidentiary value but that it would have to be tested against the common-law definition. Thus, even if the proof was insufficient to establish a violation of the federal regulation, the issue of common-law negligence remained. At least one jurisdiction has held that even if the federal motor carrier regulations do not apply, there remains a common-law duty to ensure that the load is

properly and safely secured. *Reed v. Ace Doran Hauling & Rigging Co.*, 1997 WL 177840 (N.D.Ill. Apr.7, 1997).

Brian Hartmann testified that he loaded pipes that were 18 feet long and pipes that were 21–feet long. He placed the pipes into a trough 18 feet long. The trough accommodated the 18–foot pipes, but the 21–foot pipes extended three feet beyond the front plate of the truck's rack. Hartmann tied the protruding portion of the 21–foot pipes in a bundle with a single band of a heavy wire not ordinarily used for tying cargo. He angled the 21–foot pipes into the trough but did nothing else to secure them to the truck. He admitted in hindsight that he made a mistake in not securing the pipes so they would not come loose.

Brian Hartmann's father testified that he came to the scene before the van had been removed. He found 21–foot pipes on the ground but did not find any 18–foot pipes off the truck.

■ The jury did not need to find a violation of a federal motor carrier regulation to find negligence in this case. Rather, the jury could reasonably have found Brian Hartmann guilty of ordinary negligence for failing to secure the 21–foot pipes. The pipes were too long for the 18–foot trough designed to provide a secure restraint for pipes that fit. The 21–foot pipes extended beyond the front plate designed to prevent forward shifting. The 18–foot pipes stayed on the truck during the collision, and the 21–foot pipes came off. The jury could reasonably have inferred that Brian Hartmann was negligent in not securing the 21–foot pipes to the truck itself to prevent them from coming off. Thus, even if the evidence did not establish·a violation of a federal regulation, it did show common-law negligence, which was a liability issue in the case.

### Lay Opinion

Hartmann argues that the court erred in excluding the lay opinion of an eyewitness

passenger in the Hartmann truck. Raymond Jaeckels testified that the accident happened "just like a flash." He didn't "know really how it went or what happened." He didn't see how the van reacted to the impact with the truck. When the truck hit it, the van became airborne and landed upside-down in a ditch. "Everything was blink of an eye. I didn't see nothing. It was over within two seconds."

In an apparent testimonial offer of proof outside the hearing of the jury, Hartmann's counsel asked Jaeckels: "Do you have an opinion to all that as to the general mechanism or mode in which the vehicles got to their final resting places?" Jaeckels surmised that the van came straight up over the top of the truck and that when the van landed it tore the pipe rack off the truck. The van then flipped upside-down and landed with pipe underneath the van. The trial court would not allow that opinion and instead confined the witness to a description of the height of the truck and the height of the van as it came over the truck.

■ The competency of a lay witness to give opinion evidence is

> peculiarly within the province of the trial judge, whose ruling will not be reversed unless it is based on an erroneous view of the law or clearly not justified by the evidence.

*In re Welfare of M.B.W.*, 364 N.W.2d 491, 494 (Minn.App.1985) (quoting *Cornfeldt v. Tongen*, 262 N.W.2d 684, 692 (Minn.1977)).

There are two requirements for the admission of lay-witness opinion testimony:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Minn.R.Evid. 701.

Through Jaeckels's opinion testimony, appellants sought to draw an inference as to how the pipe came loose; namely, the van tore the pipe loose, flipped, and then landed on top of the pipe. However, Jaeckels only very briefly saw the airborne van and the van at rest after it landed. He saw nothing in between those events. The supreme court has emphasized that the key inquiries in determining the admissibility of lay opinion are personal knowledge and helpfulness to the jury. *State v. Post*, 512 N.W.2d 99, 101 (Minn. 1994); *see also Holweger v. Great N. Ry.*, 269 Minn. 83, 95, 130 N.W.2d 354, 362 (1964) (finding that the trial court did not err in excluding employee's opinion on the condition of an automatic coupler involved in an accident where employee did not have personal knowledge of the coupler).

■ It is doubtful that Jaeckels's limited perceptions of the events of this accident were sufficient to satisfy the personal knowledge requirement of rule 701. But even if they were, his inference was not helpful to the jury. He testified to all the firsthand facts he knew. There is nothing in the record to show that Jaeckels was any more qualified than the jurors to draw an inference from his observations. *See Krueger v. State Farm Mut. Auto. Ins. Co.*, 707 F.2d 312 (8th Cir.1983) (in a wrongful-death action it was proper for the court to exclude an eyewitness's opinion as to whether a motorist had enough time to avoid the accident, where the witness had described his perceptions in sufficient detail and his opinion was not necessary to help the jury understand his testimony). It was not necessary here for Jaeckels to give his opinion to help the jury understand his testimony. Nor was the jury any better able to determine a fact in issue by hearing an inference from Jaeckels that the jury was equally capable of drawing.

**Jury Instruction on Damages**

■ The Minnesota civil jury instruction guides were revised and renumbered in 1999. Here the trial court gave 4A *Minnesota Practice*, CIVJIG 91.75 (1999),

on damages for wrongful death. This is the revised version of the instruction formerly numbered 4 *Minnesota Practice*, CIVJIG 180 (1997).

Hartmann complains that the 1999 version of the instruction fails to use the term "pecuniary loss," as provided in the wrongful-death statute. *See* Minn.Stat. § 573.02, subd. 1 (1998) ("The recovery in the action is the amount the jury deems fair and just in reference to the pecuniary loss resulting from the death * * * ."). Hartmann also argues that the 1999 version of the instruction fails to define pecuniary loss as "a loss which has money value." 4 *Minnesota Practice*, CIVJIG 180 (1997). The new instruction contains a heading "Lost time together." Hartmann contends that this implies that lost time together is itself compensable.

The first section of the 1999 instruction is entitled "Money value of damages." The text of the instruction directs the jury to determine "an amount of money" that will compensate for various losses described in other sections. When the heading and the text are read together, the jury is informed that it is to ascertain the money value of losses resulting from the wrongful death. The absence of the term "pecuniary loss" takes nothing away from this definition, nor would its inclusion add anything to it.

The section entitled "Lost time together" gives a rule of limitation. When the heading and the text are read together, it is clear that the jury is not to award damages beyond the life expectancy of any next-of-kin whose life expectancy is shorter than that of decedent. The text is merely a clearer statement of the same limitation that was contained in the 1997 version of the same instruction.

The 1999 version of the instruction is substantively consistent with the 1997 version of the instruction. The trial court did not abuse its discretion in giving the revised instruction on wrongful-death damages.

**Final Arguments**

■■■■■ Hartmann argues that the trial court erred in refusing to give a curative instruction following the co-trustees' closing arguments. The determination of whether remarks made in final argument require a cautionary instruction or other corrective action is a matter left to the discretion of the trial court. *Stroncek v. Berkshire Life Ins. Co.*, 292 Minn. 57, 65, 193 N.W.2d 286, 291 (1971). Counsel for the co-trustees stated in closing arguments:

I would ask you not to compromise her life with a loss of the value of the loss of what the law allows you to consider to her parents.

He concluded his final argument by giving the analogy of a famous racehorse that could have been sold for as much as $2 million and how calculation of damages of a racehorse would be simple. He then told the jury that their task was "not quite that simple here." Contending that these remarks invited the jury to award damages on the value of a life in the abstract, Hartmann requested a curative instruction:

I instruct you that the measure of damages in this case is not based on any disclosed value of Salina Muehlhauser's life. You should disregard any argument based on the value of a horse.

But the court instructed:

What the attorneys say about the law may be different from what I say. If this happens, you must rely on what I say about the law.

There is no reason to believe that the jury failed to follow the court's instructions on the law and ignore contrary arguments by the attorney.

**Interest on judgment**

■■ Finally, Hartmann argues that the trial court erred in awarding the co-trustees' full claim for interest on the entire award, disregarding that a portion of the award pertained to future damages. This is

purely a question of law, and the standard of review is de novo. *Hibbing Educ. Assn. v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

Minn.Stat. § 549.09, subd. 1(b)(2) (1998), provides:

> Except as otherwise provided by contract or allowed by law, preverdict, preaward, or prereport interest shall not be awarded on the following:
>
> * * *
>
> (2) judgments or awards for future damages.

The co-trustees conceded at oral argument that the trial court erred in allowing interest on the entire amount of damages. The interest award is reversed, and the issue is remanded for recalculation. *See Johnson v. Washington County*, 506 N.W.2d 632, 641 (Minn.App.1993), *aff'd*, 518 N.W.2d 594 (Minn.1994).

### DECISION

The trial court did not err in denying appellants' motion for JNOV or, in the alternative, a new trial, because the evidence was sufficient to establish common-law negligence even if there was no proof of a violation of a federal motor carrier regulation.

The trial court properly excluded eyewitness lay-opinion testimony that was not directly based on firsthand observation and that would not have been helpful to the jury.

The trial court properly instructed the jury on wrongful-death damages when it gave the 1999 version of the jury instruction.

The trial court did not err in refusing to give the requested curative instruction.

The trial court erred by including future damages in its pre-verdict interest award.

**Affirmed in part, reversed in part, and remanded.**