## GUY GREEN v. JULIUS A. SCHMAHL.[1]

February 25, 1938.

No. 31,310.

*Fosnes & Rolloff* and *John C. Haave,* for relator.

*William S. Ervin,* Attorney General, and *Louis F. Soukup* and *Joseph H. Seeger,* Special Assistant Attorneys General, for respondent.

STONE, JUSTICE.

*Certiorari* to the industrial commission to review its decision denying relator compensation for permanent total disability, from the special compensation fund set up by the state under 1 Mason Minn. St. 1927, § 4276. The state treasurer is respondent in this proceeding in his capacity as custodian of that fund.

Relator is 54 years old. His schooling did not carry beyond the seventh grade. He is without trade or vocation other than that of unskilled, manual labor, except that he has done many years of farming. A mishap of youth lost him his left hand and all but the upper three or four inches of the forearm.

[1]Reported in 278 N. W. 157.

April 20, 1932, while in county employ, he encountered the flying hoof of an angry mule. This time relator's right arm was the suffering member of his body, and the result thereto an ankylosed elbow joint putting it into a condition of near fixation at an angle of 100 degrees. The remaining limit of free motion is about 20 degrees. There is only 10 degrees free motion in supination and pronation of the forearm. Relator can flex the wrist to an angle of 55 degrees. His ability to abduct and adduct his hand from side to side is limited to 25 degrees. He has only a 10-point grip. Normal is 90. There is some loss of sensation in all fingers of his right hand. The shoulder joint alone is normal or nearly so. The doctors agree that the right arm and hand are capable of not more than 25 per cent normal functioning. Relator cannot now dress himself or perform his ordinary toilet.

For the partial disability chargeable to the mule, relator has been awarded compensation. His present demand goes on the proposition, found against him by the commission, that the injury to his right arm, while of itself partial, so combined in result with his previous disability as to make for him a case of total disability. If so, he is entitled to an award from the special compensation fund.

The controlling statutory provisions are in § 4276:

"If an employe receive an injury, which of itself, would only cause permanent partial disability, but which combined with a previous disability does in fact cause permanent total disability, the employer shall only be liable for the permanent partial disability caused by the subsequent injury.

"Provided, however, that in addition to compensation for such permanent partial disability and after the cessation of the payments for the prescribed period of weeks, the employe shall be paid by the state the remainder of the compensation that would be due for permanent total disability, out of a special fund known as the Special Compensation Fund, and created for such purpose * * *."

Section 4274(e) defines permanent total disability as "any other injury which totally incapacitates the employe from working at an occupation which brings him an income." That definition has noth-

ing to differentiate, for present purposes, the criteria of permanent total disability in compensation cases from those which have been long controlling in the law of disability insurance. In Wilson v. Metropolitan L. Ins. Co. 187 Minn. 462, 465, 245 N. W. 826, 828, an insurance case which possibly goes to the extreme limit in sustaining a fact finding of permanent total disability (the injury and extent of resulting disability weaker by far than those here), the cases are reviewed. Definitely rejected was the rule of some cases that "total disability means inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing." We chose rather to hold that "although an injured person may be able to perform some parts of an occupation he may be held to be totally disabled unless he is able to perform the substantial and material parts of some gainful work or occupation with reasonable continuity."

We have consistently held that total permanent disability does not mean a state of *absolute helplessness*. Maze v. Equitable L. Ins. Co. 188 Minn. 139, 246 N. W. 737. It is enough that one is so disabled for his usual occupation or one for which he may fit himself within a reasonable time. Consideration should be given to his then occupation, his training, schooling, age, and all facts bearing upon what work he may fit himself for in a reasonable time. Lorentz v. Aetna L. Ins. Co. 197 Minn. 205, 266 N. W. 699.

Furthermore and important, sporadic competence, occasional, intermittent, and much limited capacity to earn something somehow, does not reduce what is otherwise total to a partial disability. The statutory phrase "working at an occupation which brings him an income," like that of insurance "following any occupation," implies at least a reasonable degree of continuity of occupational capacity. Lorentz v. Aetna L. Ins. Co. 197 Minn. 205, 210, 266 N. W. 699, following Monahan v. Order of Columbian Knights, 88 Minn. 224, 92 N. W. 972. "Occasional work for short periods by one generally disabled by impairment of mind or body does not as a matter of law negative total permanent disability." Lumbra v. United States, 290 U. S. 551, 561, 54 S. Ct. 272, 78 L. ed. 492, 499.

The record and argument have failed to lead us to any reasonable inference of less than permanent total disability.

Relator's hands were his primary, if not sole, occupational assets. One is gone and the other so much so that he cannot engage with continuity in any income-producing occupation. From the viewpoint of earning capacity, relator's impairment is not only substantial but virtually and, in practical effect, complete. Not even persuasive is the suggestion that prior to the injury to the right arm the absence of his left did not seriously handicap relator. It is one thing to lose one hand but quite another to lose both, or, with one gone, to lose three-fourths of the use of the other arm. With one whole hand, an existing deficiency may be so overcome as in time to be largely minimized. But where, as here, there is so much disability of the remaining arm and hand, a finding of complete disability, in the legal view, is inescapable. In Peterson v. Halvorson, 200 Minn. 253, 273 N. W. 812, it was the loss of but one moiety of a thumb which, with much of preëxisting partial, made a case of total disability.

It is but attenuation of speculation and refinement of conjecture to say, as has been said in argument and evidence, that relator might fit himself for some of the simpler tasks of accountancy or trade, and, specifically, it has been urged, and with apparent sincerity, that he might become a bartender in a tavern or, perchance a "cocktail shaker for" some other unimproved successor of the candid saloon of an older day. There is no proof of that sort of thing—all of it, we repeat, is but speculative and contingent prediction and, as such, wholly conjectural.

Entertaining such views, we are constrained to consider the question one of law requiring decision for relator. The order must be reversed with directions to make an award as for permanent total disability. The relator is allowed $100 attorneys' fees over and above his costs and disbursements.

So ordered.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.