**DAIRY HOME COMPANY, a Minnesota corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 3–58 Civ. 401.**

United States District Court
D. Minnesota,
Third Division.

Jan. 20, 1960.

Lee N. Johnson, St. Paul, Minn. (Bundlie & Kelley, St. Paul, Minn., of counsel), for plaintiff.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, Jerome Fink and Jack F. Blair, Attys., Dept. of Justice, Washington, D. C., Fallon Kelly, U. S. Atty., St. Paul, Minn., for defendant.

DONOVAN, District Judge.

By this action Dairy Home Company, plaintiff (hereinafter referred to as Dairy), is suing the United States of America for a refund of federal income taxes and interest thereon, paid by it for the calendar year ending December 31, 1952. Defendant admits payment of the taxes and claim for refund by Dairy without notice of disallowance within six months from the filing of said claim. Dairy claims that, due to inadvertence, it failed to include a permissible deduction in the sum of $2545.48 for the depreciation of a five-year term bottling contract, purchased by Dairy in 1952, causing it to sustain a net operating loss for said year.[1]

Plaintiff's evidence is directed at proving:

1. Golden Maid lost money during the five-year period preceding the sale of its routes to Dairy.

2. Golden Maid's profits were limited to its ice cream business.

3. Golden Maid's trade name was not acquired by Dairy.

1. Dairy relies on 28 U.S.C.A. § 1346, and 26 U.S.C.A. § 23(*l*).

4. The customers acquired from Golden Maid by Dairy had no earning power or resale value.

5. Hence good will is not involved.

The facts disclose that during the years we are here concerned with, Dairy and its predecessors were engaged in the production and sale of milk and its by-products. Dairy's president was experienced in the milk business, having progressed from delivering milk to the position of chief executive. Since his first employment by Dairy as an officer he engaged in a program of expansion and consolidation.[2] Dairy, pursuant to this expansion program, entered into a purchase agreement (Exhibit 1 herein) with Golden Maid, Inc. Golden Maid was in both the ice cream and milk businesses and had found the latter unprofitable. By this agreement Dairy purchased certain "milk routes and existing customer outlets for milk and other fluid milk products, [and] bottles and cases now at the [bottling] plant * * * or in the hands of the customers and consumers." In addition to acquisition of outlets and bottles and cases, Dairy by the agreement succeeded to Golden Maid's rights under a favorable five-year bottling contract with the Hastings Co-operative Creamery Association (hereinafter referred to as Hastings). Said contract contained a price-fixing escalator clause. With the passing of time, results arising out of the contractual relation of the parties thereto became disappointing to Dairy and Hastings, all of which led to mutual termination after five years.

The purchase agreement whereby the taxpayer acquired the milk business of Golden Maid, Inc. put the taxpayer in the milk business. Previously it had only ice cream routes. The milk sales by the taxpayer to the twenty-seven outlets acquired were sizeable and amounted to approximately $200,000 per year. Many of the outlets remained with the taxpayer for at least one to three years.

The total amount to be paid by the taxpayer to Golden Maid, Inc. pursuant to the purchase agreement of May 28, 1952, was $30,000. The taxpayer treated the purchase both on its books and records and on its income tax returns, $20,000 for good will and $10,000 for the purchase of supplies and equipment.

Dairy, by amended income tax returns, shows that it had reported payment of $30,000 as the purchase price of Exhibit 1 herein, whereas it should have been described and reported as a payment of:

"$10,000.00 * * * for cases, bottles and machinery * * *. * * * the remaining $20,000.00 represented the value of the contract with * * * Hastings, * * * incorrectly entered on the Dairy * * * books and records as a purchase of good will, and no expense deduction was taken in any of the years involved, [whereas] the $20,000.00 portion of the purchase price should have been depreciated over the remaining life of the contract, i. e., May 21, 1952, to December 21, 1956."

(See Exhibits 1, 2, 3, 6 and A.)

It was stated by Dairy's president, testifying in the instant case, that despite the application of the escalator clause as insisted upon by Hastings, Dairy could not have bottled milk at a more advantageous price. Dairy produced expert testimony to the effect that the $20,000 allocated to good will was of little or no value to Dairy. It contends that the total purchase price of $30,000 agreed to be paid to Golden Maid, Inc., pursuant to the purchase agreement of May 28, 1952, should be allowed to it as a depreciable item representing supplies, equipment and a contract it acquired between Golden Maid, Inc., and Hastings Co-operative Creamery.

Dairy further contends that it is entitled to depreciate the entire $30,000 it agreed to pay Golden Maid, Inc., under

2. See exhibits 1, 8, 9 and J.

the purchase agreement of May 28, 1952, while the Government contends that the $10,000 originally claimed and allowed as basis for depreciable assets, both tangible and intangible, equals or exceeds amounts paid for depreciable assets, including the contract with Hastings Cooperative Creamery.

The Government's case is directed at proving that there was ample supply of the raw product in the area here involved, the obtaining of which was no problem to those concerned, but that sales to the purchasing public were the difficulty met with by Dairy. Defendant contends that Dairy, by purchase acquired a going business (the bottling contract making up an inseparable part) in a metropolitan area, and that the facts of the instant case do not qualify Dairy for the depreciation relied on for the claimed refund.[3]

Exhibits 13 to 17 and C to I inclusive, were offered and ruling by the Court reserved. The objections thereto are sustained.

■ The sole issue has to do with Dairy's claim for refund, based on alleged depreciation of said contract. The Court, as the trier of the facts of the instant case, is bound to consider any interest a testifying witness appears to have in the outcome of the action, and is not compelled to believe such testimony, even though it is not directly contradicted.[4] The testimony of the experts produced at trial is subject to the same scrutiny and evaluation as that of any other witness testifying in the case.

■ The burden of proof is upon the plaintiff to establish Dairy's action by a fair preponderance of the evidence. This burden is added to by the presumption that in a tax case such as this one, the finding of the Commissioner is correct. Preparatory to appraisal by the Court of the evidence submitted, it should be borne in mind that it is well settled that the question of whether property or property rights become worthless during a particular period of time so as to authorize a deduction for income tax purposes is one of fact.[5] The property here in question is Exhibit 1. The contract relied upon was amended in February, 1952, for a term of ten years, subject to the right of "either party [to] terminate * * * five years from * * * date", and any claimed depreciation must be on that basis. Dairy's claim for a deduction on account of the claimed depreciation "is a statutory privilege, and the burden is upon * * [the taxpayer] to prove that the loss is deductible under the statute."[6]

■ At the threshold of the instant case we are met with the legal truism that the finding of the Commissioner is presumptively correct.[7] The burden is on the taxpayer to show defendant's determination invalid. Absent the presumption in the case at bar, the evidence of the Government is barren of substantial proof of the value of the bottling contract or good will accompanying the sale of the assets. However, the presumption must be overcome by evidence of a more substantial nature than that the claim for a refund is reasonable.[8] The presumption of correctness that accompanies the determination of the Commissioner is in the category of the "burden of proof" presumption. Deductions are a matter of legislative grace, and only as there is clear provision therefor can any particular deduction be allowed.[9]

---

3. Treasury Regulation 118, § 39.23(1)–3 (1953).

4. Seletos v. Commissioner of Internal Revenue, 8 Cir., 254 F.2d 794, 797; Doering v. Buechler, 8 Cir., 146 F.2d 784, 786.

5. Meyer v. Commissioner of Internal Revenue, 8 Cir., 243 F.2d 262, 264.

6. Rand v. Helvering, 8 Cir., 116 F.2d 929.

7. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; United States v. Pfister, 8 Cir., 205 F.2d 538, 542; Arkansas-Missouri Power Corporation v. Paschal, 8 Cir., 243 F.2d 584, 588.

8. United States v. Pfister, supra; Cohen v. Kelm, D.C.Minn., 119 F.Supp. 376.

9. Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416.

The Court must determine whether or not this contract for bottling was subject to depreciation and, if so, whether any portion of the $30,000 consideration represents cost or other basis allocable to the bottling contract.

The 1939 Internal Revenue Code, 26 U.S.C.A. § 23(l), provides for a deduction for depreciation of property used in the trade or business and by Regulation 39.23 (1)–3, this deduction is specifically extended to intangible property:

> "the use of which in the trade or business or in the production of income is definitely limited in duration, may be the subject of a depreciation allowance. Examples are patents and copyrights, licenses and franchises. * * * No deduction for depreciation, including obsolescence is allowable in respect of good will."

True, tax laws, if doubtful, are to be construed in favor of the taxpayer. The bottling contract in effect provided for bottling all the Grade A bottled milk and dairy products needed to supply taxpayer's milk routes in a specified Federal Marketing Area for a five-year term. The price of such bottling was very favorable, even though an escalator clause subjected it to fluctuation with Hastings' actual operating costs, but here Dairy acquired the entire milk business of Golden Maid, Inc., which helped to put Dairy in the milk business.

As to allocation, the $10,000 representing the cost of bottles and equipment has not been subjected to serious challenge. It may be disregarded. Dairy was entitled to depreciate this amount and the bottling contract was not and should not be included in this allocation.

Plaintiff argues that "in any case, where personal services [such as the acquisition of Mantor Johnson as sales manager from seller to plaintiff buyer]

are an ingredient of a business, [it is] not * * * indicative of good will", citing Revenue Ruling 57–480, 1957, 2 Cum.Bul. 47.

While Dairy's evidence militates against productive Golden Maid good will or an effective transfer thereof in the sale involved, in my opinion it represents a capital outlay, rather than a deductible business expense.[10] In a proper case, the economic factors of the situation may be important in interpreting an agreement, and in arriving at the intent of the parties.

At the time of the purchase herein controlling, no allocation was made by the signatories, other than the book entries indicating a purchase of good will in the amount of $20,000. This, and the evidence submitted in plaintiff's case, are insufficient to carry the burden that is plaintiff's in the case at bar. It may well have been in the mind of plaintiff's contracting officer that Dairy was acquiring a depreciable asset in obtaining Exhibit 1, and that incidental assets provided by that agreement were insignificant, but in my opinion the evidence does not authorize an income tax deduction for the reasons assigned herein.

Concluding, may I add that plaintiff's counsel made a thorough and lawyer-like presentation of the evidence at trial and in submitting points and authorities by brief and argument. The Government's belated brief of December 19, 1959, and plaintiff's reply brief of January 9, 1960, have been considered by the Court.

As indicated, supra, all deferred matters and objections have been ruled upon, and when not expressly sustained, are overruled.

Defendant may submit findings of fact, conclusions of law and form of judgment.

Plaintiff is allowed an exception.

10. National Weeklies, Inc. v. Commissioner of Internal Revenue, 8 Cir., 137 F.2d 39. The decision ultimately depends on the intent of the parties and is governed to a large extent by the particular facts in each case.