## CLARENCE PETTER v. K. W. McKEE, INC., AND ANOTHER.

133 N. W. (2d) 638.

March 5, 1965—No. 39,361.

---

[5]State v. Sucik, 217 Minn. 556, 14 N. W. (2d) 857.

*Spence, Baglio & Buckley* and *Ronald O. W. Ylitalo,* for relators.
*Edward B. McMenomy* and *Curtis Gilmore,* for respondent.

NELSON, JUSTICE.

Certiorari to review a decision of the Industrial Commission. The issue on this appeal is whether the record contains sufficient competent evidence to sustain the conclusion of the commission that the employee-respondent, Clarence Petter, is permanently and totally disabled and entitled to benefits under the Workmen's Compensation Act for that type of disability from K. W. McKee, Inc., referred to hereinafter as employer, and Travelers Insurance Company, its compensation insurer.

Employee is 52 years of age. He has an eighth-grade education. His work experience falls into three categories—truck driver, farmer, and general laborer. After leaving school employee worked for his father on his farm and hauled milk on a route in the vicinity of Rosemount, Minnesota, until he was about 21 years of age. For the following 6 years he drove a truck for a road construction company, hauling dirt, cement, and gravel, and also drove snowplows during the winter. He next worked on sewer construction jobs and then went back to his father's farm. He went to work for the Great Northern Railway Company as a laborer at the age of 27 and worked there from 1939 to 1945, this work involving lifting, bending, and twisting. He entered the United States Army in 1945 and drove a truck until he was discharged the following year with a nonmedical discharge. He then worked for Swift & Company doing cleanup work for a short time; then drove a truck for a fuel company, lifting and carrying baskets of coal weighing 100 pounds or more; and hauled garbage on a route in St. Paul, using the garbage he hauled to feed hogs he raised on his father's farm. This hauling involved lifting heavy cans weighing from 150 to 200 pounds. In 1949 he bought a small farm near Rosemount and continued raising hogs and farming. He continued with his garbage route until 1955 and also worked for a heating company driving a truck and delivering and removing furnaces, which involved heavy lifting. In 1956 he began work with employer herein as a driver of a car carrier type of truck, making trips to the western part of the country. In unloading these trucks he was required to lift steel skids weighing from 75 to 100 pounds. He worked continuously for employer until December 21, 1957, with the exception of a period of 3 months when he drove a gravel truck.

While working for employer employee put in a 54-hour week and was able to perform his work without difficulty. He had no back trouble prior to December 21, 1957, when he was injured while pulling steel skids off his truck in preparation for unloading cars at Cedar Falls, Iowa. One of the skids dropped and struck his leg. In attempting to hold onto the skid he strained his back and experienced immediate pain, which continued on his return trip to St. Paul so that he had to

stop driving several times because of back pain. He had to turn down a trip the following day because of back pain. He took a rest for a few days over the Christmas period, hoping for improvement, but his back continued to hurt and upon his return to the employer's office on December 29 he was sent to the Northwest Industrial Clinic, receiving treatment there for 6 weeks. He failed to improve and obtained permission from his employer to go to a chiropractor. The chiropractor treated him for several months without helping him, and finally in April 1958 employee consulted Dr. Malvin Nydahl, an orthopedist. His back pain had continued to get worse and by this time he was having pain in his left leg. He had not worked from December 22, 1957. On July 8, 1958, a laminectomy was performed and large, herniated discs were removed at the L3-4, L5-S1 levels. On July 11, 1958, the employee's condition was again explored and since that time he has remained under the care of Dr. Nydahl and Dr. Sheldon M. Lagaard.

Employee testified that since his operation he has tried to do numerous jobs around his home such as driving a tractor, hoeing in the garden, mowing the lawn, and other chores, but has constantly experienced severe pain in his back and legs when engaging in these activities. He testified that after trying to ride a tractor for 20 minutes he experienced so much pain that he had to go to bed and has been unable to farm any of the 60 acres which he owns; that he has tried to do some garden work but any activity undertaken has caused severe pain in his back and legs and he has thus been unable to continue with such work. While he has found it possible to operate a lawnmower for about 20 minutes, he found it necessary to stop at the end of that period because of pain. He tried to raise rabbits, starting in 1958, but found that he was unable to clean out the coops because of back and leg pain. He has been unable to climb a ladder without experiencing severe pain. He applied for a job with employer following his operation but there was no light work available for him. He testified that sitting for any length of time brings on discomfort in his back and legs and that walking more than a block and a half produces discomfort. He says that he does not feel he can drive a truck again

and that merely riding in a car brings on back and leg pain. He testified that he thought perhaps he could do some light type of work if he didn't have to keep regular hours, but has had no trade school training and has no special skills.

Following the accident of December 21, 1957, he was paid compensation for 104 weeks of temporary total disability and 122.5 weeks of permanent partial disability, based on a 35-percent permanent partial disability of the back. Employee thereafter petitioned the Industrial Commission for additional benefits. After hearings in November and December of 1962, he was found to be permanently and totally disabled within the meaning of the Workmen's Compensation Act. On appeal by employer and its insurer from the referee's decision, it was unanimously affirmed by the Industrial Commission.

The main controversy in this case centers around the fact that the medical experts—Dr. Lagaard, testifying for employee, and Dr. Donald R. Lannin, testifying for employer and insurer—agreed that employee was only partially disabled to the extent of 35 to 40 percent and that under the circumstances he should be able to do light work.

Thomas R. Ondrey, supervisor of special services to older workers and workers in minority groups for the Minnesota State Department of Employment Security, called as a witness by employee, testified that because of employee's physical disabilities, lack of education, and lack of training in special skills, he was not presently qualified for the light work to which the medical experts had referred. Mr. Ondrey stated:

"* * * [L]ight work is always associated with skill. The greater the skill the lighter the work, and when you take skill away from the man and leave him unskilled, then there is no such thing as light work. That phrase is tossed around too freely. I would like an explanation from the doctor what he means by light work in the field of competitive employment."

Mr. Ondrey testified that employee was given a battery of tests which showed that his aptitudes lay in electrical repair and clerical fields, but Mr. Ondrey felt that employee's present education and phys-

ical disabilities deprived him of entry into either of those fields. He testified that notwithstanding the findings of the doctors to the effect that employee had no more than 35- to 40-percent disability in his back, he was unemployable.

Thus the question before this court is whether the evidence as a whole, taking into account the conflict between the testimony of the medical experts and the employment expert on the issue of employ- ability, reasonably supports a finding by the commission that employee is totally and permanently disabled.

The record shows that employee sought light work from employer on at least two occasions but was advised that none was available. He testified that he has not applied elsewhere because he does not know of any employer who would tolerate the irregular work schedule that his back would force him to keep. Certainly his attempts to carry on various activities about his home, considered in conjunction with the medical testimony, furnish ample proof of how much work activity he could tolerate. It is clear also from the testimony of Mr. Ondrey, who testified that were it not for employee's back disability he would be employable, that his opinion was based upon the actual physical disability which employee has.

1-2. Counsel for employer and its insurer took the position in oral argument that the testimony of the employment expert had little rele- vance in the face of the testimony of the medical experts. Prior de- cisions of this court, however, have made it clear that the testimony of such an employment expert is both relevant and important in de- termining permanent total disability. It has been held that if a man is unemployable in the labor market because of his injuries he may be held to be totally disabled even though he may be able to perform some type of work for which there is no market. See, Lee v. Min- neapolis St. Ry. Co. 230 Minn. 315, 41 N. W. (2d) 433.

3-4. In the Lee case we held that a conflict in the opinions of ex- pert witnesses is to be resolved by the trier of fact, and that in so doing the trier of fact may determine the comparative weight to be given to the respective opinions and consider the qualifications of each expert and the source of his information. In that case the employer,

in seeking to establish that the commission's findings were not sustained by the evidence, asserted that it was error to permit the supervisor of placements of the Minnesota State Employment Service to testify that gainful jobs with reasonable continuity were not available for a person handicapped with disabilities similar to those which afflicted the employee. It was contended that such testimony was immaterial because it had no bearing upon the question of the extent of the employee's disability and because the record indicated that the employee had not looked for a job in Minnesota.

Mr. Justice Matson, speaking for this court, in rejecting that argument said (230 Minn. 319, 41 N. W. [2d] 436):

"* * * With this contention we do not agree. In prior decisions, we have held that, although an injured person may be able to perform some parts of his occupation, he may be held to be totally disabled if he is unable to perform the substantial and material parts of some gainful work or occupation with reasonable continuity. Wilson v. Metropolitan L. Ins. Co. 187 Minn. 462, 245 N. W. 826; Green v. Schmahl, 202 Minn. 254, 278 N. W. 157. This rule can only mean that the injured employe must be in such condition that prospective employers will normally and reasonably be willing to hire him despite his handicaps. If reasonably stable employment is not available for an employe by reason of certain injuries which have crippled him physically or neurologically, evidence of that fact—through the testimony of an experienced employment supervisor—is both material and relevant in determining whether the employe's disability is of such a character that he has no reasonable likelihood, *while such disability continues,* of being able to obtain and pursue an income-yielding occupation with reasonable continuity as contemplated by M. S. A. 176.11, subd. 5. See, Baker v. MacGillis Gibbs Co. 222 Minn. 460, 25 N. W. (2d) 219. The purpose of the testimony is not to establish the nature of the disability or its duration, but to determine, assuming the existence of certain injuries, whether employment is available for a person so handicapped. An employe who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist,

may well be classified as totally disabled. He who has no reasonable prospect of selling his services has no material earning capacity and is substantially helpless as a self-sustaining unit of society."

We held in the Lee case that the record clearly sustained the commission's findings of total disability. We also said in Green v. Schmahl, 202 Minn. 254, 256, 278 N. W. 157, 158:

"* * * Occasional work for short periods by one generally disabled by impairment of mind or body does not as a matter of law negative total permanent disability."

Another decision by this court which holds that it is not necessary that a person be absolutely helpless before he can be declared permanently and totally disabled is Berg v. Sadler, 235 Minn. 214, 219, 50 N. W. (2d) 266, 269, wherein this court said:

"It is obvious from M. S. A. 176.11, subd. 5, defining total disability, that, although an injured person may be able to perform some part of an occupation, nevertheless, from a legal viewpoint, he may be regarded as totally permanently disabled if he cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity. In other words, where the services he can perform are so limited in quality, quantity, or dependability that a market for them does not exist, he may well be classified as totally disabled."

In comparing the facts in the Berg case with the facts in the case at bar, we find much the same situation. In that case the employee suffered injury to his feet and claimed that he was permanently totally disabled. His testimony was that the disability from which he suffered made it impossible for him to work at any occupation which he had the capacity to perform for more than 2 or 3 hours at a time and that thereafter his feet would swell and remain painfully swollen throughout the day so that he could not continue working.

Employer and insurer in the instant case have cited Krnetich v. Oliver Iron Min. Co. 202 Minn. 158, 277 N. W. 525, as controlling in their favor. The court in that case merely held that the commission properly refused to adopt as a determining factor, on the issue of total or partial permanent disability, evidence that the employee

after diligent effort had not been able to secure work because of economic factors affecting the labor market, all medical testimony being in agreement that he could readily perform services in certain capacities in the locality in which he resided. The facts in the Krnetich case make it as distinguishable from the case at bar as from Berg v. Sadler, *supra,* where this court distinguished the Krnetich case by saying (235 Minn. 220, 50 N. W. [2d] 270): "Here, relator's difficulty is his inability to pursue any income-yielding occupation for which he has either the capacity or training."

In Green v. Schmahl, 202 Minn. 254, 256, 278 N. W. 157, 158, this court, in discussing the finding of permanent total disability in Wilson v. Metropolitan Life Ins. Co. 187 Minn. 462, 245 N. W. 826, said:

"* * * Definitely rejected was the rule of some cases that 'total disability means inability to perform any of the duties of any occupation which the insured might be ordinarily capable of performing.' We chose rather to hold that 'although an injured person may be able to perform some parts of an occupation he may be held to be totally disabled unless he is able to perform the substantial and material parts of some gainful work or occupation with reasonable continuity.' "

For other cases involving a finding of total permanent disability, see McGuire v. Viking Tool & Die Co. 258 Minn. 336, 104 N. W. (2d) 519; Fink v. Cold Spring Granite Co. 262 Minn. 393, 115 N. W. (2d) 22; Luthens v. Glencoe Red & White Store, 264 Minn. 26, 117 N. W. (2d) 386.

It is stated in 11 Schneider, Workmen's Compensation Text (Perm. ed.) § 2307:

"Generally permanent total disability 'means disablement of an employee to earn wages in the same kind of work, or work of a similar nature, that he was trained for, or accustomed to perform, or any other kind of work which a person of his mentality and attainments could do * * *.' "

Employer and insurer also contend that the Industrial Commission permitted employee to receive compensation for arthritic changes which

progressed normally and existed independently of industrial injury. Whether arthritic changes are actually causing the employee added discomfort is a fact question, and one on which the evidence is in conflict. The medical expert testifying for employer diagnosed a congenital defect of employee's back which causes persons with such a defect back trouble regardless of injury. He felt that employee had a 35-percent permanent partial disability but attributed only 20 percent of the disability to the accident, the surgery, and postsurgical complications. Employee's medical expert testified that the X rays taken indicated that employee's spine had undergone some changes during the period he had been examining him. He testified that employee's arthritis can be characterized as a wearing-out process which gets progressively worse as one grows older. It was his opinion that employee's arthritis was not disabling and he said that some people have the amount of changes seen on X rays of employee without any pain at all. It is not insignificant that employee's testimony that he had not experienced back trouble and was able to do several types of heavy work prior to December 21, 1957, remains uncontradicted.

We assume that the Industrial Commission concluded that employee's arthritic condition had nothing to do with his disability, for it found that as a result of employee's personal injury of December 21, 1957, he will remain totally and permanently disabled indefinitely into the future, without mention of any arthritic condition. In view of Dr. Lagaard's testimony on the issue of employee's arthritic condition and employee's own statement that he had no difficulty with his back prior to December 21, 1957, we find sufficient evidence to sustain the finding of the commission on that issue.

5-6. Employer's and insurer's final contention is that the Industrial Commission erred as a matter of law in making a determination of permanent total disability. The pertinent findings on that issue are:

"That as a result of employee's personal injury of December 21, 1957, he has been continuously disabled from gainful employment to the date of last hearing herein on December 6, 1962, and will remain so disabled indefinitely into the future, and is therefore permanently

totally disabled within the meaning and purport of the Workmen's Compensation Law of Minnesota."

"That although employee was totally disabled from gainful employment at the time of last hearing herein and it appeared on the evidence that he would be unemployable in gainful competitive employment in the future to an indefinite time it appears that such condition of unemployability might be mitigated by serious efforts toward rehabilitation and/or retraining."

Employer and insurer argue that it is inconceivable that employee may be found to be permanently totally disabled when the commission has also found that his condition might be mitigated by efforts toward rehabilitation and retraining. They contend that if the condition might be mitigated then it cannot be permanent. From the record and findings we think it relatively clear that employee has sustained permanent and total disability. The fact that there is a remote possibility of rehabilitation through retraining in the future will not of itself preclude a finding of permanent total disability.

The commission in making the foregoing findings no doubt was aware of Minn. St. 176.461, which provides that an award of the commission may be set aside by it for cause. Whether there would be at any time sufficient cause to justify the vacation of the award ordinarily rests in the discretion of the commission. McGuire v. Viking Tool & Die Co. *supra.*

In Baker v. MacGillis Gibbs Co. 216 Minn. 469, 13 N. W. (2d) 457, the order of the commission was reversed by this court and the case remanded with directions to award compensation for total disability under circumstances detailed in the opinion. The Industrial Commission thereafter entered its order determining that the employee was totally disabled from May 28, 1940, to and including January 20, 1943, pursuant to this court's decision. After a period of compliance the insurer gave notice of reduction of payments, which matter was referred to a referee for hearing. The referee found that employee was totally disabled from May 28, 1940, to August 23, 1944, and only partially disabled from August 24, 1944, to August 1, 1945; that in such partially disabled condition employee was able to earn

$16.15 per week; and that, on the basis of those findings, employee was entitled to receive compensation of only $7.71 per week for that period. The commission affirmed this award and on certiorari this court then held in Baker v. MacGillis Gibbs Co. 222 Minn. 460, 25 N. W. (2d) 219, that a review of the evidence in the record on re-hearing compelled the conclusion that the findings of the commission that employee was but partially disabled during the period from August 24, 1944, to August 1, 1945, and was then capable of earning $16.15 per week in gainful employment were amply sustained, and that the reduction in compensation was therefore correct and in conformity with the compensation act. Quoting the rule set forth in Jones v. Excelsior Laundry Co. 183 Minn. 531, 237 N. W. 419, we said in the second Baker case (222 Minn. 462, 25 N. W. [2d] 221) that the Industrial Commission having based its findings upon fact questions—

"* * * [a] finding upon a question of fact cannot be disturbed unless consideration of the evidence and the inferences permissible therefrom clearly require reasonable minds to adopt a conclusion contrary to the one at which the commission arrived. [Citations omitted.]"

A case may be reopened upon sufficient cause if, in the sound discretion of the Industrial Commission, it appears that a reduction in compensation is justified. Minn. St. 176.461. We think it clear, therefore, that although there may be later improvement in employee's condition, that fact will not defeat the award since if there should be such improvement the employer could seek a modification of the award under § 176.461. See, McGuire v. Viking Tool & Die Co. *supra*; Elsenpeter v. Potvin, 213 Minn. 129, 132, 5 N. W. (2d) 499, 501, 12 Minn. W. C. D. 366, 369.

We conclude that in the light of the recognized legal principles enunciated by this court the decision of the Industrial Commission that employee is totally and permanently disabled must be affirmed. Respondent is allowed $250 as attorneys' fees in this court.

Affirmed.