## ANNA REESE v. PRESTON MARKETING ASSOCIATION AND ANOTHER.

142 N. W. (2d) 721.

May 13, 1966—No. 39,907.

*Tyrrell, Jardine, Logan & O'Brien* and *Raymond W. Fitch,* for relators.
*George O. Murray,* for respondent.

OTIS, JUSTICE.

Relators seek review of an order of the Industrial Commission granting respondent employee continuing total disability compensation.

The issues raised are (1) whether compensation shall be suspended until the employee submits to corrective surgery, and (2) whether benefits may be awarded to an employee who does not diligently seek sedentary work she is capable of performing.

Respondent, Anna Reese, was employed by relator to seal plastic bags containing dry milk when she was injured on February 23, 1962, by trip-

ping and falling against a lift cart. As a result of the accident she was hospitalized for 8 days. Her left leg remained in a cast for 9 weeks, and she was thereafter required to use crutches until she was fitted with a steel brace. The injury consisted of a fracture of the distal tibia of the left ankle.

Dr. E. D. Henderson of the Mayo Clinic, who examined and treated Mrs. Reese, recommended an arthrodesis which would fix the ankle joint in a rigid position but would, in his opinion, permit it to bear weight without pain. Dr. Henderson first estimated a 50-percent disability of the ankle but revised his opinion to 90 percent on learning that she was unable to walk any distance without a brace. It was his opinion that the arthrodesis, if successful, would decrease her disability to 30 percent of the ankle. He testified that although it constituted major surgery it was not a dangerous operation and that there was a 90-percent likelihood it would be successful.

On behalf of the employer, Dr. Donald Lannin testified that in his opinion Mrs. Reese had a 50-percent permanent partial disability of the left foot and ankle which would be increased to 60 percent if she submitted to the arthrodesis. He stated that an ankle brace was preferable to an operation because he felt surgery would make the ankle "more of a nuisance" and would increase the employee's trouble rather than correct it.

Mrs. Reese declined surgery for reasons which she did not clearly articulate beyond expressing her impression it would not improve her condition and stating her children recommended against it.

The referee granted temporary total disability beyond the healing period to the date of the hearing and found a 60-percent permanent partial disability of the left foot and ankle which was subject to revision if she submitted to surgery. He also held that compensation payments for temporary total or temporary partial disability were to be suspended until Mrs. Reese submitted to an arthrodesis. If she failed to do so within a specific time, the award was to be limited to temporary total disability for the 104-week healing period and additional benefits computed on a 60-percent permanent partial disability of the left foot and ankle.

The employer was unsuccessful in dismissing an appeal which it there-

after took to the Industrial Commission. The commission set aside that part of the award which suspended compensation for temporary total disability until the operation was performed and found that Mrs. Reese was entitled to continuing total disability without surgery for not to exceed 350 weeks or until her condition improved.

Although there was no specific finding that Mrs. Reese's refusal to submit to an operation was reasonable, there is implicit in the findings and in the commission's opinion a determination that the decision was one she could properly reach. In effect, the commission adopted both Dr. Lannin's opinion that the operation would increase Mrs. Reese's disability and Dr. Henderson's view that without an operation she would continue to suffer a 90-percent permanent partial disability of her left foot and ankle.

■ It is the general rule that an employee's unreasonable refusal to submit to corrective surgery justifies the commission in suspending the payment of benefits on the theory the disability is then attributable to the employee and not to the employer. The test of reasonableness is based on a variety of factors, including the danger attendant upon the operation, the prospect of success, and the pain and discomfort which may result.[1] In the instant case it was the prerogative of the commission to determine from the conflicting medical testimony the likelihood that the arthrodesis would improve the employee's condition, and it chose to accept the opinion of the employer's expert in resolving that issue.[2] Her own doctor stated that she would not be able to walk for 3 or 4 months following the operation. Under these circumstances we hold that the record supports a decision the employee was not obliged to submit to an arthrodesis and agree that her failure to do so was reasonable.

---

[1] Sheldon v. Gopher Granite Co. 174 Minn. 551, 219 N. W. 867; Lund v. Biesanz Stone Co. 183 Minn. 247, 250, 236 N. W. 215, 217; Kruchowski v. Swift & Co. 201 Minn. 557, 561, 277 N. W. 15, 18; Dudansky v. L. H. Sault Const. Co. 244 Minn. 369, 70 N. W. (2d) 114; Fowler v. W. G. Const. Co. 51 N. Mex. 441, 450, 188 P. (2d) 160, 167; 1 Larson, Workmen's Compensation Law, § 13.22.

[2] Martin v. Swift & Co. 269 Minn. 217, 130 N. W. (2d) 522; Annotation, 105 A. L. R. 1477.

■ A more difficult question is raised by the unsatisfactory showing of the employee's inability to secure sedentary work. It appears without dispute that she is a 62-year-old woman with a fourth-grade education and without employment skills. Her only occupations have been candling eggs, plucking chickens, washing dishes, and packaging milk. While part of her difficulty stems from obesity, the fact remains that the positions for which she is qualified require physical activity while standing on her feet. The community in which she lives is a town with a population of approximately 1,400 people, and it is fair to infer that the job opportunities are limited. However, the employer with some justification complains that Mrs. Reese has not been diligent either in seeking employment or securing rehabilitation and retraining. Nevertheless, we believe that in the light of her age, general physical condition, education, and employment record, a finding that she was entitled to compensation for total temporary disability in spite of her capacity to do sedentary work is supported.[3]

In determining whether an employee is totally disabled, we have repeatedly held that it is not a prerequisite that she be absolutely helpless.[4] It is sufficient if she cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity.[5] If the services she is able to render are so limited in quality, quantity, or dependability that a market for them does not exist, it is proper to classify her as totally disabled.[6] In this connection, the type of work available in a particular community is relevant.[7]

Applying these principles to the case before us, for the reasons we

---

[3] Barton v. Nevada Poultry Co. 253 Iowa 285, 110 N. W. (2d) 660.

[4] Berg v. Sadler, 235 Minn. 214, 219, 50 N. W. (2d) 266, 269; Richter v. Shoppe Plumbing & Heating Co. 257 Minn. 108, 112, 100 N. W. (2d) 96, 99.

[5] Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 319, 41 N. W. (2d) 433, 436; Berg v. Sadler, 235 Minn. 214, 219, 50 N. W. (2d) 266, 269; McGuire v. Viking Tool & Die Co. 258 Minn. 336, 342, 104 N. W. (2d) 519, 524.

[6] Petter v. K. W. McKee, Inc. 270 Minn. 362, 368, 133 N. W. (2d) 638, 642.

[7] Fink v. Cold Spring Granite Co. 262 Minn. 393, 407, 115 N. W. (2d) 22, 31.

have previously indicated the demand for services of the type Mrs. Reese could render in a small community is manifestly limited. There is no question but that her present disability forecloses work she would otherwise have been qualified to do. Under these circumstances it was proper for the commission to direct the payment of total temporary disability benefits until and unless her condition improves.

Respondent is allowed $250 attorney's fees.

Affirmed.