**Betty SPANGRUD, Respondent,**

v.

**PRECISION GRINDING COMPANY, INC., et al., Relators.**

No. 48630.

Supreme Court of Minnesota.

May 18, 1979.

Fitch & Johnson and Raymond W. Fitch, Minneapolis, for relators.

Abrams & Spector and John J. Horvei, Minneapolis, for respondent.

Considered and decided by the court en banc without oral argument.

PER CURIAM.

Certiorari on the relation of the employer-insurer to review a decision of the Workers' Compensation Court of Appeals awarding employee benefits consequent upon disability caused by an occupational disease. Our review of the record requires us to reject relators' contentions that compensation was awarded in contravention of Minn. St.1971, § 176.662, and that a factfinding in a prior compensation proceeding requires reversal of the decision under review. We affirm.

Employee, who worked as a machinist for several years, was disabled on January 21, 1973, by bronchial asthma. In a compensation proceeding commenced in October 1973, the then Workmen's Compensation Commission found that she had contracted an occupational disease and had been temporarily totally disabled at various periods including one from January 21, 1973, to December 21, 1973, and awarded her compensation for such disability. The commission also found that it was unduly hazardous for her to continue working in employment exposing her to dust, fumes, and smoke. It ordered her removal from such employment as of December 21, 1973, and ordered relators to pay compensation for retraining pursuant to Minn.St.1971, § 176.-662. Relators, after remand of an appeal from that decision, paid employee compensation for temporary total disability to December 21, 1973, and for 20 weeks between September 15, 1974, and January 31, 1975, and also made payments, described in the receipt for compensation as being for removal from industry, for 104 weeks. These payments terminated May 5, 1976. Between September 7, 1976, and March 7, 1977, relators also paid 26 weeks of retraining benefits, and employee took a course in operating bookkeeping machines.

Employee filed a second claim petition in September 1976 seeking further disability compensation. Relators denied liability and alleged that if further temporary total or temporary partial disability was claimed, the first decision must be reopened. The compensation judge disagreed and after hearing found that employee had received removal-from-industry-benefits for 104 weeks, but could still be awarded compensa-

tion for temporary total disability following termination of the 104 weeks. He held that she was not entitled to concurrent disability and retraining benefits. After finding that she had been temporarily totally disabled from May 6, 1976, to the date of hearing on March 11, 1977, a period of 44 weeks and 2 days, and that she had received 26 weeks of retraining benefits, he awarded her temporary total disability compensation for 18 weeks and 2 days, and continuing compensation conditioned on her showing evidence of continued diligent effort to find employment with her present skills. He also awarded supplementary benefits pursuant to Minn.St.1976, § 176.132.

On appeal the Workers' Compensation Court of Appeals determined that employee had been temporarily totally disabled on December 21, 1973, and that the 104 weeks of benefits the compensation judge had found to be for removal from industry were compensation for temporary total disability, that the removal-from-industry benefits do not commence until termination of the period of compensable temporary total disability, and that that period had not terminated. The court of appeals further found that employee was entitled to concurrent payments of temporary total disability and retraining benefits during the period of her retraining.[1] It agreed that she was entitled to supplementary benefits.

Relators urge that the award is contrary to the provisions of Minn.St.1971, § 176.-662,[2] which provided in pertinent part:

"When an employee is afflicted with an occupational disease to such a degree that it is unduly hazardous for such employee to continue in any employment involving the hazard of exposure to such occupational disease, or where for other causes it is medically inadvisable and unduly hazardous for such employee to continue in an employment involving such hazard of occupational disease, the commission shall order the removal of such employee from such hazardous employment.

"An employee so removed is eligible for retraining for a new occupation and compensation during such retraining, as provided by the workmen's compensation law. In the event retraining benefits are not accepted by such employee, he is to be compensated during his period of unemployment following such removal as though he were wholly or partially disabled by reason of compensable injury, but such compensation shall not exceed a period of 104 weeks following the date of the order so removing such employee. In the event an employee is disabled, by reason of compensable injury, at the time an order for his removal is issued, the benefits provided by this section attach and begin at the termination of such period of compensable disability and constitute additional benefits. In the event retraining of the employee is undertaken during the period of such partial disability compensation is not to continue beyond 104 weeks from the date when such retraining is begun.

\* \* \* \* \* \*

"An employee so removed from employment is entitled to compensation for disability, or his dependents to compensation for his death, from occupational disease, if such disablement of the employee occurs within three years, in case of silicosis or asbestosis, or within one year, in case of other occupational diseases, from the date of such employee's last exposure to the hazards of such occupational diseases prior to such removal."

Relators first contend that in the prior compensation proceeding the court of appeals had made a finding that employee was temporarily totally disabled from January 21, 1973, through December 21, 1973, and that because this finding was made

1. The court of appeals found that employee had been retrained, and consequently determined that she was entitled to concurrent benefits, from September 15, 1974, to January 31, 1975. The file discloses that retraining occurred between September 7, 1976, and March 7, 1977.

The necessary modifications can be made on remand and do not prevent consideration of the propriety of awarding concurrent benefits.

2. Repealed by L.1973, c. 643, § 12.

after a hearing held February 20 and 21, 1974, it was also an implicit finding that employee was not disabled between December 21, 1973, and February 21, 1974. The argument that this implicit finding controls the question of employee's condition during the stated period is based on our holding in *Hirt v. Leader Hardware & Furniture Store*, 309 Minn. 572, 244 N.W.2d 269 (1976). There the Workers' Compensation Board found that employee's temporary total disability, which he had claimed was continuing at the date of hearing on June 15, 1971, had terminated May 3, 1971. This court held the finding was also an implicit finding that employee was not temporarily totally disabled between May 3 and June 15, 1971, and reversed an award for that period made in a subsequent proceeding, saying:

"* * * This issue, once decided, could be relitigated by petition to vacate under Minn.St. 176.461, not by a subsequent claim petition." 309 Minn. 574, 244 N.W.2d 271.

 Although the procedure set forth in Hirt ordinarily should be followed when the correctness of such an implicit finding is later questioned, we hold that in this case employee should not be required to petition to vacate under § 176.461 because in our view the evidence on the issue of her disability and the relevant legal principles demonstrate that the finding made by the court of appeals in the proceeding under review must be sustained. The determination that employee was continuously temporarily totally disabled from and after December 21, 1973, has ample evidentiary support in her testimony about her physical condition, her inability to obtain employment aside from a few days' work at a store before Christmas 1973, and the difficulties she had in attending the retraining course, as well as in the testimony of a vocational consultant that employee would not be able to work full time in competitive employment, and in the testimony of a medical

specialist that she has chronic obstructive lung disease with recurrent exacerbations, is limited in normal activities, and ideally should work only at a sedentary job requiring little energy, in an atmosphere free of pollutants, and with little public contact. Moreover, the finding is clearly consonant with our decisions holding that an employee continues to be disabled if his condition is such that he can obtain only sporadic employment from which he cannot earn more than an insubstantial income. See, e. g., *Schulte v. C. H. Peterson Const. Co.*, 278 Minn. 79, 153 N.W.2d 130 (1967); *Reese v. Preston Marketing Ass'n.*, 274 Minn. 150, 142 N.W.2d 721 (1966); *Petter v. K. W. McKee, Inc.*, 270 Minn. 362, 133 N.W.2d 638 (1965).

Relators' contention that they were not liable for further temporary total disability benefits was premised on their assumption that employee was not disabled on December 21, 1973, the date of the order removing her from the hazards of her employment, nor within a year of her last exposure to those hazards (January 20, 1973). Our affirmance of the finding that she was disabled at those times removes the assumption essential to their argument.

Their claim that employee was improperly awarded supplementary benefits commencing January 1, 1976, pursuant to § 176.132 was similarly based on the implicit finding in the earlier proceeding that she was not disabled between December 21, 1973, and February 21, 1974.[3] The argument must fall before the determination that she was continuously disabled for 104 weeks from December 21, 1973, to December 26, 1975.

 Relators also argue that employee cannot receive disability compensation and retraining benefits concurrently because § 176.662 does not expressly state that she receive "104 weeks of additional compensation" during retraining, as was provided in

---

3. Minn.St.1976, § 176.132, subd. 1, provided: "An employee who has suffered personal injury for which benefits are payable under section 176.101 and *who has been totally and continuously disabled for more than 104 weeks* shall be eligible for supplementary benefits as hereinafter prescribed after 104 weeks have elapsed and for the remainder of his continuous total disablement." (Italics supplied.)

Minn.St.1971, § 176.101, subd. 8. In *Adams v. Nadave*, 309 Minn. 536, 245 N.W.2d 227 (1976), we held that the more specific language of § 176.662 that "compensation is not to continue beyond 104 weeks from the date when such retraining is begun" prevailed over the more general language of § 176.101, subd. 8, and required that the retraining undertaken by an employee disabled by occupational disease could not continue beyond 104 calendar weeks from the beginning date of such retraining. But § 176.662 contains no specific provision prohibiting an employee from receiving concurrent temporary total disability and retraining compensation, and it does provide that an employee removed from hazardous employment "is eligible for retraining for a new occupation and compensation during such retraining, as provided by the workmen's compensation law." That language appears to mean that in the absence of a specific provision in § 176.662, the provision in § 176.101, subd. 8, authorizing concurrent benefits during retraining is applicable. Having in mind the purpose of retraining disabled employees and the legislative policy of encouraging them to seek retraining, we see no rational basis for inferring that the legislature intended to grant an employee disabled by injury concurrent disability and retraining benefits but not to grant an employee disabled by occupational disease equivalent compensation. We construe §§ 176.662 and 176.101, subd. 8, to grant employees disabled by occupational disease the right to receive concurrent disability and retraining benefits.

■ Relators contend, finally, that the court of appeals was not authorized to order reimbursement to a nonintervening health insurer for medical expenses paid for surgery ultimately found to be causally related to employee's occupational disease. Relators do not contend that the information furnished in support of the reimbursement was insufficient or inaccurate and have not shown that they were prejudiced by the insurer's failure to intervene. The court's finding that it can direct payment of the claim for reimbursement places the "burden of the economic loss resulting from the deaths and injuries of workmen" upon industry, recognized by this court in *Tatro v. Hartmann's Store*, 295 Minn. 282, 287, 204 N.W.2d 125, 128 (1973), as one of the basic principles of workmen's compensation legislation.[4]

Affirmed. Remanded for the correction of the record only.

TODD, J., took no part in the consideration or decision of this case.

---

4. See, also, *Brooks v. A. M. F., Inc.*, 278 N.W.2d 310 (Minn. 1979), for a more complete analysis.