**CITY OF NEW PRAGUE, COUNTY OF SCOTT, Minnesota, Petitioners, Respondents,**

v.

**Ralph W. HENDRICKS et al., Defendants,**

**Thomas E. Topka, B. J. Novotny, Margaret E. Novotny and Eclipse Enterprises, Inc., Appellants,**

**Richard J. Kratochvil, Defendant.**

**No. 48971.**

Supreme Court of Minnesota.

Oct. 19, 1979.

Robert A. Nicklaus, Chaska, for appellants.

O'Neill, Goggins & Traxler and Robert O. O'Neill, New Prague, for respondents.

Heard before YETKA, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This case commenced with a petition for condemnation filed by the New Prague city attorney in the name of the city to acquire right-of-way easements for County State Aid Highway 37 ("CSAH 37"). Some of the landowners whose property was to be condemned, including appellants, filed objections to the petition. The matter was heard by the Scott County District Court, which held that the allegations of the petition were true; that proper procedures had been followed for the condemnation; and that the condemnation was for a valid public purpose and was reasonably necessary. Appellants have appealed from this order, asserting that the statutory procedures for such a condemnation were not followed, and that the city attorney lacked authorization to file the petition on behalf of the city. Appellants also dispute the district court's finding of public necessity. We affirm.

A comprehensive development plan for the city of New Prague was completed in 1970 by an independent planning company. The plan indicates proposed roadways for the city, including the projected extension of CSAH 37, which is to follow Seventh Street in New Prague from State Highway 21 easterly to Columbus Avenue and then continue east and south to State Highway 19. The proposed extension of CSAH 37 beyond Seventh Street would cross through the properties of appellants.

Testimony from the city engineer, Wayne Leonard, and from one of the appellants, Bruce Novotny, indicates that the right-of-way for the proposed extension was dedicated before appellants platted and developed their property.

Public hearings were held on the proposed roadway, and an alignment for the roadway was selected. The Scott County Board of Commissioners and the Department of Highways approved the designation and extension of CSAH 37 along this route in 1974. The board of commissioners also agreed to fund eligible portions of the project. Preliminary surveys and plans were prepared, and approximate right-of-way requirements were indicated. Additional public hearings were then held on the route, the property involved, and estimated costs.

On May 3, 1976, and again on May 2, 1977, the city council passed motions authorizing the city attorney to acquire the property necessary for CSAH 37. The city attorney, Robert O'Neill, filed a petition for condemnation of the designated property in the Scott County District Court on June 14, 1977. Appellants and Richard J. Kratochvil, another affected property owner, filed objections to the petition. The matter was heard on February 9, 1978.

Prior to testimony on that day, Mr. Kratochvil and others moved for dismissal of the petition on jurisdictional grounds. They asserted that the city attorney was not authorized by statute to bring a petition for condemnation. The court took the motion for dismissal under advisement during the hearing on the petition, and concluded that the city attorney did have the requisite authority.

The district court issued its order on May 3, 1978, concluding that the procedures followed by the city were in accord with the statutes governing acquisition of property by condemnation and with the city charter, and that the taking was for a public purpose and appeared to be necessary. Mr. Kratochvil has not appealed from the court's order.

The following issues have been raised by the appellants:

(1) Did the city attorney have the capacity and the proper authorization to act on behalf of the city in petitioning for condemnation?

(2) Did the city follow required statutory procedures for the acquisition of property by condemnation?

(3) Is the taking of property under this petition for a valid public purpose and reasonably necessary?

■ 1. Minn.Stat. § 117.035 (1978) enumerates the parties authorized to bring eminent domain proceedings. The statute provides:

PROCEEDINGS, BY WHOM INSTITUTED.

If such property be required for any authorized purpose of the state, the proceeding shall be taken in the name of the state by the attorney general upon request of the officer, board, or other body charged by law with the execution of such purpose; *if by a corporation or other body, public or private, authorized by law to exercise the right of eminent domain, in its corporate or official name and by the governing body thereof*; and if by an individual so authorized, in his own name. [Emphasis added.]

Thus, an eminent domain proceeding for the city of New Prague must be brought in the name of the city by the city council.

In the instant case, the petition for condemnation was brought in the name of the city by the city attorney. Appellants argue that the authority of a municipal body to initiate eminent domain proceedings must spring from a resolution of the municipal body, and cite Op. Att'y Gen. No. 104 (Sept.

5, 1946) to support this assertion. They note that the city charter does not give the city attorney explicit authority to petition in the name of or on behalf of the city, and contend that a motion of the city council to give this authority to the city attorney is insufficient.

The attorney general opinion states that a town can acquire the necessary property for a right-of-way by either purchase or condemnation. If the acquisition is by condemnation, the condemnation should conform to Minn. Stat. ch. 117 (1978). Prior to the condemnation proceedings, a resolution should be duly adopted by the town board stating that the desired land is necessary for town purposes.

The city contends that it has validly delegated authority to petition for condemnation to its city attorney by means of a motion passed at a city council meeting. The city maintains that the difference between a motion and a resolution as required by the attorney general opinion is really one of semantics under these circumstances. Moreover, the city's home rule charter authorizes the city council to determine its own rules and order of business.

The city's argument that the difference between a resolution and a motion is insignificant fails to recognize a difference in subject matter: the opinion of the attorney general recommends a resolution stating that the condemnation is necessary, while the city council's motion delegated authority to initiate the condemnation. Nevertheless, although the council did not specifically pass a resolution stating that the condemnation is necessary, its delegation of authority to the city attorney to proceed with the condemnation implies a decision that the condemnation is necessary for city purposes.

Appellants' assertion that the council could not delegate authority to the city attorney to bring condemnation proceedings in its name appears to be without merit. A collective body such as the city council must act through individuals; the city attorney would seem to be an appropriate person to

actually write and file the petition. It is difficult to imagine a more appropriate means of executing the decision to initiate condemnation proceedings.

2. Appellants argue that CSAH 37 will be a controlled-access highway and therefore the statutory requirements for controlled-access highways, including Minn. Stat. § 160.08 (1978), must be complied with. Minn. Stat. § 160.08 enumerates the road authorities authorized to determine whether a controlled-access highway is justified and to plan the construction or improvement of such a road. "Controlled access highway" is defined in Minn. Stat. § 160.02, subd. 12 (1978), as meaning "any highway, street, or road, including streets within cities over, from, or to which owners or occupants of abutting land or other persons have or are to have no right of access, or only a controlled right of the easement of access, light, air, or view."

Uncontroverted testimony indicates that CSAH 37 is not intended to be a controlled-access highway. The city engineer, Mr. Leonard, described the proposed route of CSAH 37 in detail in his testimony. He discussed the access which would be provided for each roadway that would intersect CSAH 37. Mr. Leonard concluded:

> The road proceeds south and access can be provided to any development in the area, the resulting configuration being that we should eventually connect all streets to provide circulation for people living in this area to get in and out.

This testimony indicates that rather than being a controlled-access highway, CSAH 37 will give direct access to all adjoining property owners. Therefore, § 160.08 is not applicable to this case.

Minn. Stat. § 162.02 (1978) sets forth some of the statutory procedures for the establishment of a state-aid highway. Subd. 4 provides in part:

> Location and establishment. The county boards of the several counties shall by resolution and subject to the concurrence

of the commissioner locate and establish a system of county state-aid highways in accordance with the rules and regulations made and promulgated by the commissioner. * * * After review the commissioner shall by written order approve each system or any part thereof which in his judgment is feasible and desirable.

According to the city's Exhibit 11,[1] an environmental assessment worksheet prepared on CSAH 37 by the city engineer, the Commissioner and Department of Highways and the Scott County Board of Commissioners did approve the designation and location of CSAH 37. The city of New Prague has therefore demonstrated its compliance with § 162.02, subd. 4, requiring the approval of the county board and the commissioner of highways for proposed state-aid highways. Compliance with subds. 7 and 8 of § 162.02, which require the approval of the governing body of a city for portions of a state-aid highway located within city limits, is indicated both in Exhibit 11 and by the authority given to the city attorney to commence condemnation proceedings for the CSAH 37 right-of-way.

Minn. Stat. § 162.17, subd. 2, (1978) provides:

> Agreements with cities having a population of less than 5,000. The governing body of any city having a population of less than 5,000 may enter into an agreement with the county board of the county in which it is located for the construction of any county state-aid highway within the corporate limits of the city. The plans and specifications for the construction shall be prepared by the county engineer or by an engineer employed by the city as may be agreed upon by the governing body of the city and the county board and shall be approved by the governing body and the county board. It may be agreed that the city shall perform the construction and that the county shall reimburse the city for its share thereof as

---

1. It should be noted that appellants claim that the trial court abused its discretion in admitting Exhibit 11 because it was allegedly cumulative, repetitious, and self-serving. However, upon a review of the record we conclude that the trial court acted properly in admitting this evidence.

may be agreed upon, or that the county shall perform the construction and that the city shall reimburse the county for its share thereof as may be agreed.

Appellants maintain that this statute requires the county board and county engineer to prepare the plans and specifications for CSAH 37 prior to the condemnation proceedings. However, a careful reading of the statute indicates that the plans may be prepared by an engineer employed by the city, and the county board need only approve the plans prior to *construction*. The statute does not require that the plans be approved by the county board prior to condemnation, and in fact this would not be feasible: the city engineer testified that he had been instructed by the city council to await acquisition of the right-of-way before completing the final plans.

Appellants also assert that the preliminary plans for CSAH 37 are invalid because they allow an 8% roadway grade at one point, in excess of the 5% grade maximum recommended by Minnesota Highway Department standards. The city engineer admitted that the grade is in excess of the recommended maximum, but he indicated that this grade could be revised and spread out over a larger portion of the roadway without significantly altering the plans, and indeed, he had preliminary sketches in which the grade was reduced. Thus, contrary to appellants' argument, all of the CSAH 37 plans are not rendered invalid by the 8% grade, nor would a revision of the plans modify the decision as to which property must be taken.

3. The standard of necessity for the taking of property by eminent domain was recently discussed by this court in *County of Blue Earth v. Stauffenberg*, 264 N.W.2d 647 (Minn.1978):

"Although lands may not be taken by eminent domain unless such taking appears to be *necessary*, it is well settled in this jurisdiction that there need be no showing of absolute or indispensable necessity, but only that the proposed taking is *reasonably necessary or convenient* for the furtherance of the end in view."

[quoting *Northern States Power Co. v. Oslund*, 236 Minn. 135, 137, 51 N.W.2d 808, 809 (1952); emphasis in original.] 264 N.W.2d 650. And in *Metropolitan Sewer Board v. Thiss*, 294 Minn. 228, 200 N.W.2d 396 (1972), this court stated:

This court has always held that the propriety of the exercise of eminent domain is a legislative question. The judicial issue is whether the condemning authority acted arbitrarily and in disregard of the best interest of the public, or upon an erroneous theory of law, or whether the evidence is practically conclusive against the authority. There need be no showing of absolute necessity, and the mere suggestion of possible alternatives does not, in itself, support a finding of arbitrariness.

294 Minn. 230, 200 N.W.2d 397 (footnotes omitted).

The city engineer and the city planner both testified to the necessity of constructing CSAH 37 along its proposed route through New Prague. The engineer emphasized that the highway would facilitate controlled development of New Prague, provide a traffic corridor for the northeastern area of New Prague, and improve the safety of the street system. He summarized by stating that in his opinion the road was for a public use and reasonably necessary. The city planner testified that CSAH 37 would be part of a necessary collector system and would serve as a utility corridor within the city of New Prague.

Appellants challenge the lower court's decision to admit opinion testimony by the city planner on the issue of necessity, claiming that no adequate foundation was laid. This court has held that a trial court has broad discretion in determining the sufficiency of the foundation laid for an expert opinion. *Wenner v. Gulf Oil Corp.*, 264 N.W.2d 374 (Minn.1978); *Gardner v. Coca Cola Bottling Co. of Minnesota*, 267 Minn. 505, 127 N.W.2d 557 (1964). In the instant case, the city planner studied the projected growth of New Prague based on official statistics, studied traffic flows and the existing roadway system in New Prague, and

studied the commercial development in areas adjacent to proposed CSAH 37. With this foundation, it must be concluded that the trial court did not abuse its discretion by admitting opinion evidence of the city planner as to the necessity of CSAH 37.

The only testimony challenging the necessity of proposed CSAH 37 was from Biryl Novotny, an appellant in this action and a witness on his own behalf. Mr. Novotny was not, properly speaking, an expert, but he was permitted to give his opinion on the necessity of the highway. This court has held that in resolving a conflict in the opinions given by expert witnesses, the trier of fact may determine the comparative weight to be given to respective opinions and consider the qualifications of each expert and the source of his information. *Petter v. K. W. McKee, Inc.*, 270 Minn. 362, 133 N.W.2d 638 (1965). In addition, the court as a trier of fact must consider any interest a testifying witness appears to have in the outcome of the action. *Dairy Home Co. v. United States*, 180 F.Supp. 92 (D.Minn.1960). Certainly, Mr. Novotny has a personal interest in whether or not CSAH 37 will cross through his property.

The lower court concluded that the taking of property for CSAH 37 is reasonably necessary and for a public purpose. This finding should not be disturbed unless it is clearly erroneous. Minn.R. Civ.P. 52.01; *County of Blue Earth v. Stauffenberg, supra*, at 651. There is ample evidence to support the lower court's finding of necessity.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.